# COMMISSION COURT OF TEXAS.

### NAT. MITCHELL v. ALEX. BALDERAS ET AL.

#### (December 17, 1879.)

A POWER OF ATTORNEY to W. J. B. in order that he may, during my absence, attend to any and all matters and things wherein I may have any interest whatever, either direct, remote or implied, to sign and deliver any and all papers he may deem proper not detrimental to my interest, to receive and receipt for all moneys due me, to sue and be sued, to pay debts he may think I justly owe from any funds of mine in his possession, to draw on J. H. B. & Co. for balance of funds due me, etc., does not confer upon the attorney the power to sell and convey lands.

PAROL TESTIMONY is not admissible to extend his authority under it to sell lands. Its nature and extent must be ascertained from the terms of the instrument itself, and cannot be extended by parol.

APPEAL from Bexar county. Opinion by QUINAN, J.

STATEMENT.— Mitchell instituted suit against the Balderases (trespass to try title) for the recovery of two hundred acres of land. The Balderases pleaded not guilty. The case was submitted to the judge, a jury being waived, and there was judgment for the defendants. Mitchell moved for a new trial, and this being overruled appealed. On the trial it was admitted that the title to the land was in Mitchell on May 1, 1867.

Defendants read in evidence, over plaintiff's objections, a conveyance of the land by plaintiff, by W. J. Joyce, attorney in fact, to Alex. Balderas, and a power of attorney from Mitchell to Joyce in the following terms:

#### POWER OF ATTORNEY.

THE STATE OF TEXAS, }
    County of Bexar. }

Know all men by these presents, that I, Nat. Mitchell, a citizen of the state and county aforesaid, have this day

2

nominated, constituted and appointed, and by these presents do nominate, constitute and appoint, Rev. W. J. Joyce, of the state and county aforesaid, my true and lawful attorney in fact, in order that he may, during my absence, attend to any and all matters and things wherein I may have any interest whatever, either direct, remote or implied; and I do hereby fully authorize and empower the said W. J. Joyce to sign and deliver any and all papers he may deem proper to sign as my attorney not detrimental to my interest, to receive and receipt for any and all moneys that may in any manner be due me, to sue and be sued, to plead and to be impleaded in any cause or action wherein I may be interested, and also pay debts due or he may think I am justly owing, from any funds of mine in his possession; and he is hereby especially empowered and fully authorized to draft on Messrs. J. H. Brown & Co., No. 45 South St., New York, for any balance of funds due me by them on account of sales of cotton and wool shipped them for sale for account of Nat. Mitchell & Co. and John Tabor. Hereby fully ratifying and confirming all and singular the acts and doings of the said W. J. Joyce done and performed in this behalf, in as full and perfect manner as though I had been personally present and done the same myself.

NAT. MITCHELL.

Defendants proved by Joyce: The execution of deed by him to Balderas as attorney in fact for Mitchell; the payment to him of $200, the purchase money; that he had used some of it to pay taxes on Mitchell's lands; that the object in selling was to raise money to pay taxes and prevent the sacrifice of other property; that the money was all appropriated for Mitchell's benefit, who was in Mexico when the sale was made; that he had no other authority from Mitchell to sell lands than the power of attorney; that Mitchell did not object to the sale until about the time he came home from Mexico, when he expressed dissatisfaction. On cross-examination he stated: That the power of attorney authorized him to collect moneys due Mitchell, several thousand

dollars; that he collected a few hundred dollars; that there was a pressing necessity to sell land to pay taxes; that if he had collected the claims due Mitchell it would have been sufficient; that he collected $400, part of which he used for the benefit of Mitchell and part turned over to Belvin by Mitchell's order; Mitchell returned from Mexico in 1869; that witness believed he had power to sell the land and believes that Mitchell thought so.

Mitchell testified that he gave Joyce the power of attorney to settle up his affairs, etc., but gave him no authority to sell land; there was never any necessity for it; had Joyce informed him of the need of money he could have let him have it immediately; that he never ratified the sale by Joyce; that he had brought suit for the land in 1872; that he discharged Joyce from his service soon after hearing of the sale of the land; had a conversation with the Balderases on the land and offered them double the money they had paid by way of compromise to give up the land peaceably; that Joyce had collected enough to pay his taxes thrice over, etc.

Opinion.— The questions raised by the assignments of error are as to the sufficiency of the power of attorney to authorize Joyce to sell land, and whether there was any ratification by Mitchell of the sale, and the admissibility of Joyce's testimony to extend the power.

That the power of attorney to Joyce was not a general one, we think is very apparent. Its purpose is stated to be, "in order that he may, during my absence, attend to any and all matters and things wherein I may have any interest," etc. Now, by the term "attend to," it would seem that to look after, to care for, to superintend, control and preserve, was intended. This is the obvious meaning of the words used, and all that follows must be taken as indicating the necessary and appropriate means to accomplish that end.

Judge Story says: "Subject to reasonable qualifications

and restrictions, the doctrine is unquestionably true, that
an express written authority cannot be enlarged by parol
evidence, or an authority be implied where exists an ex-
press one.   The authority, too, as to the nature and extent,
is construed according to the force of the terms used and
the objects to be accomplished.   An implied agency is
never construed to extend beyond the obvious purposes for
which it is apparently created.   The intention of the parties,
deduced from the nature and circumstances of the particular
case, constitutes the true ground of every exposition of the
extent of the authority, and when an intention cannot be
clearly discerned the agency ceases to be recognized or im-
plied."   Story on Agency, ch. VI.

These rules are recognized and enforced in several cases
in our own court.   In Reese v. Medlock, 27 Tex., 123,
Moore, J., says: "It is a well established principle that
when an agency is created and conferred by a written in-
strument, the nature and extent of the authority given by
it must be ascertained from the instrument itself, and can-
not be enlarged by parol evidence of the usage of other
agents in like cases," etc.   And in that case it was held
that authority to sell, transfer and convey lands, and gen-
erally to do and perform all acts and deeds for me, and in
my name, concerning any and all property, etc., did not
authorize the agent to barter or exchange land for other
property.   So in Harrington v. Moore, 21 Tex., 544, it was
held that an authority to collect notes, etc., does not au-
thorize an agent to trade the notes for land.   And in Cor-
dova v. Knowles, 37 Tex., 19, a power of attorney to sell
"claims and effects," it was held, could not be construed to
authorize the sale of land.   In Berry v. Harnage, 39 Tex.,
651, where the power of attorney was general for the col-
lection of debts, and to make, seal and execute deeds of
conveyances, etc., it was held it did not confer authority to
sell lands.   In Alabama, in Dearing v. Lightfoot, 17 Ala.,
33, where the subject is fully discussed and numerous cases
cited, it was held that a general power of attorney to his

agent, " to act for him in all cases whatever, and to do all which he himself might do," the agent being at the time in charge of the plantation of his principal, did not confer upon him authority to sell slaves.

Applying these principles to the construction of Mitchell's power to Joyce, we think it evident that it conferred no power upon him to sell land. It is given that Joyce may attend to everything in which Mitchell may be interested, to collect money, to pay debts, to bring and defend suits, to settle accounts, to draw drafts, to sign and deliver papers not detrimental to his interests. It is abundant in words and specifications, but it does not say to sell lands; and to our minds nothing can be clearer than that if Mitchell had intended to confer that authority he would have said so.

We conclude that the power of attorney does not support the deed to Balderas; that the testimony of Joyce was not admissible to extend the authority of it, and as there is no proof of any ratification of the sale, that the court erred in giving judgment for defendant, and the judgment must, therefore, be reversed and the cause remanded.