### GEORGE L. PORTER v. T. E. MILLER ET AL.

#### No. 3433.

1. **Title by Limitation.**—It was in evidence that one under whom the defendant claims went into possession in 1841 of a tract of land of which that in controversy is a part; that the residence of such party was and continued to be upon land the title to which was in dispute by reason of a controverted boundary line. The possession was continuous and adverse until the statute of limitations was suspended, January 28, 1861. *Held*, under these facts title by limitation had vested in parties so in possession; such title is good, regardless of breaks in possession thereafter. See facts.

2. **Constructive Possession.** — The land sued for was part of a tract occupied from 1841. Limitation began by reason of the adverse possession of and upon the land in dispute. Title by limitation was completed, and subsequently a part of the tract was sold. *Held*, that the purchaser took title by reason of his vendor's title, and it does not affect his rights that the particular part had never been in actual possession. The title vesting by constructive possession extended to the limits of the tract under which the actual possession was taken and held.

APPEAL from Harris.   Tried below before Hon. JAMES MASTERSON.
This is a second appeal.   In the former (76 Texas, 593) is a statement of the facts.   From it and the opinion a full statement appears.

*E. P. Hamblen*, for appellant, cited Rev. Stats., art. 1317; Railway v. Murphy, 46 Texas, 367; Altgelt v. Brister, 57 Texas, 432; Boaz & Co. v. Schneider, 69 Texas, 128; Hawkins v. Nye, 59 Texas, 101; Hutchins v. Masterson, 46 Texas, 553; Austin v. Talk, 20 Texas, 167; Ivey v. Petty, 70 Texas, 179; Blassingame v. Davis, 68 Texas, 595.

*J. M. Coleman*, for appellees.—The Seneschal old homestead and improvements were situated upon the disputed strip lying between the Trott line and the line insisted upon by appellants, and said improvements extended over to the Trott line.   Seneschal had such possession of said homestead for a period of more than ten years prior to the institution of this suit as gives appellees title by limitation.

COLLARD, JUDGE, *Section A*.—This is the second appeal of this case.   The case on former appeal will be found in 76 Texas, 593. The pleadings and issues are the same now as they were then, and the evidence on the question of boundary much the same, the difference being mainly in the proof upon the locality of the land in dispute of the old Seneschal improvements, it now being shown that they were on the disputed strip of land.   We refer to the case on former appeal for further statement and the disposition made of it.   On the last trial there was again a verdict and judgment for the defendants Miller and wife, and the plaintiff has appealed.

We see no reason to change our views, as expressed in the former opinion and affirmed in the opinion of the Supreme Court on the

motion for rehearing, upon the question of boundary. It is clearly and conclusively shown by the testimony, that the Tierwester league includes the land in controversy, and that the true boundary of this league and the Luke Moore is where the plaintiff claims it to be. On the former appeal, the evidence was held to be so certain and convincing as to require the court to reverse and render for plaintiff on the question of boundary; but had there been no such opinion, we would feel compelled to so decide now upon the evidence as it now appears in the record, were the question of boundary the only one before us. A rehearing was granted by the Supreme Court and the reversal sustained, but the court refused to render judgment for plaintiff, because it did not appear that the old Seneschal improvements were entirely on the Moore league, and because if they were on the strip of land in dispute, the defendants' title by limitation under Seneschal's possession would be good.

The court below on the last trial again submitted the question of boundary to the jury, and if there could be a question as to the correctness of the verdict on the issue of limitation set up by defendants, it would be our duty to again set it aside. The verdict is, however, certainly correct on defendants' claim of ten years limitation. It was in proof, by undisputed testimony, that Seneschal went into possession in 1841, and this possession was continued until at least the time the statute of limitation was suspended, January 28, 1861. The undisputed evidence now shows, that these improvements were on the disputed strip of land between the Trott line and the true line of the Moore league. Seneschal claimed his land by deed from John Levi, of date February 20, 1840, "for 44½ acres of land, being the western or upper half of a tract of 88½ acres (being lot No. 1.) sold by Perry, executor of Austin, to Mulryne, and by him sold to Crawford, and by Crawford sold to Levi and McCormick, and known as lot No. 1." It begins at the Luke Moore northwest corner; thence south 20 degrees west 1000 varas; thence south 70 degrees east 250 varas; thence north 20 degrees east 1000 varas to a red oak in the Moore line; and thence with the line to the beginning. By an old map, offered in evidence, made by one H. Trott in 1838, and recorded December 18, 1838, showing a survey and subdivision of the west half of the Luke Moore league, made, as he certifies, for the executors of Stephen F. Austin, we find the 88½ acres, or lot No. 1, apparently in the northwest corner of the Luke Moore league, the west half of which was bought by Seneschal, his chain reaching back to Austin's executor. It is shown by the testimony where the Trott line for the west line of the league is, over on the Tierwester league, making the disputed strip between the two leagues. This Trott line was recognized as the true boundary of the Moore league up to 1860, when surveyors Gillespie and Powers found the true line to be 125 varas further east, parallel with the Trott line.

(Parties according to interest still claim to one line or the other, and some owners of the Tierwester only claim to the Trott line.) George H. Bringhurst surveyed the 44 acres for Seneschal, September 29, 1842, as shown by field notes and sketch in evidence. The calls do not indicate a conflict with the Tierwester, the particular description being 1000 varas from the northeast corner of the Moore league along its west line by 250 varas east. But the general description is, "being the northwestern (most) moiety of a league of land known and designated as the Luke Moore tract, and also known as the west half of lot No. 1," thus identifying it with the Trott survey and division of the west half of the league. The sketch of the field notes shows the location of Seneschal's house and barn, the house near the west line, and, as before stated, it was proved that the house and improvements were on the disputed strip. We think the evidence is too clear to doubt that Seneschal's claim under his deed and the Bringhurst survey was to the Trott line. The verdict of the jury could not reasonably have been otherwise. So, as said in the former opinion in the case, Seneschal's possession was more than sufficient in length of time to perfect in him the title to the land he occupied and included in his survey. The evidence now having identified the land he so occupied and claimed, his title to the 44½ acres running to the Trott line is established beyond cavil. Had the verdict been otherwise it could not have stood.

The foregoing conclusions will dispose of most of the questions involved in the case.

It is said by appellant, that the court erred in refusing to instruct the jury at his request not to consider the time since March 14, 1871, the date when the land was conveyed to Mrs. Miller, who was one of Seneschal's heirs. On the 14th of March, 1871, the Seneschal heirs, Alexander, Louis, and Mrs. Miller, divided the 44½ acres, the north 11 acres to Mrs. Miller, the next 11 acres to Alexander, and the most southern 11 acres to Louis Seneschal. The court instructed the jury, that if they should believe that defendants or those under whom they claim have had peaceable and adverse possession of the land in controversy, using or enjoying the same, for a period of ten years at any time before the institution of this suit (excluding the time between January 28, 1861, and the 30th of March, 1870), then they should find for defendants. After the partition Mrs. Miller was not in possession of the land in controversy at all. There was evidence showing that Louis was in possession of the old home place covered by his 11 acres after the partition, but it can not be supposed that the jury under the court's charge allowed defendants the benefit of his possession after the partition as one "under whom they claimed." He was, after the partition, if in possession, claiming in his own right his 11 acres, and not the land in controversy; besides, such possession was not needed to perfect de-

fendant's title. The possession of the 44¼ acres before the war was more than sufficient to satisfy the terms of the charge.

It is insisted, that the court erred in giving the following charge requested by defendants: "And if such actual possession, if any, was of land lying between said disputed lines, and lying inside of the metes and bounds set out in said deeds of defendants and those under whom they claim, then defendants and those under whom they claim need not have had actual possession of any of the land claimed by plaintiff, if at the same time it appears that the land claimed by plaintiff is a part of the land claimed by defendants or those under whom they claim, and described by metes and bounds."

Porter only sued for three acres of the land, and it is true that none of the land claimed by him was ever in actual possession by Seneschal; but if it was a part of the land, the 44¼ acres described in the deed to Seneschal, and within the boundaries of his survey, his constructive possession of a part of the disputed strip would extend to the limits of his survey, and would include the land claimed by plaintiff from defendants. Porter v. Miller, supra. The charge is somewhat obscure, but it was not erroneous.

The verdict of the jury is amply supported by the evidence on the plea of limitation, and according to the views herein expressed should not be set aside. The judgment ought to be affirmed.

*Affirmed.*

Adopted March 26, 1892.