**WOODLEY v. BECKNELL.** (No. 2138.)

(Court of Civil Appeals of Texas. Texarkana. June 4, 1919. On Motion for Rehearing, June 26, 1919.)

1. ADVERSE POSSESSION &⇒98 — NOTORIOUS ADVERSE POSSESSION CONTROLS CONSTRUCTIVE POSSESSION OF OWNER.

Where one having a deed to land took actual possession of part of a 20-acre tract, all outside the calls of his deed, making adverse claim to all of it, his adverse possession extended to all the tract, provided his claim was of sufficient notoriety; the true owner not having actual possession of any of his land, so that rule giving priority to his constructive possession had no application, and this though the adverse occupant erroneously believed his deed covered the tract.

On Motion for Rehearing.

2. JUDGMENT &⇒712—AS EVIDENCE OF TITLE NOT CONCLUSIVE AS TO THIRD PERSONS.

Judgment, in suit to remove cloud from title by S. against the unknown heirs of F. and R., in terms simply vesting title in S., was not, in trespass to try title by S.'s grantee against a third person, evidence of the facts recited in S.'s petition, that by lost deeds F., patentee of the land, had conveyed to R., and R. had conveyed to L., grantor of S.—that is, that L. had acquired title—though if the lapse of time was sufficient to justify the presumption that F. was dead when S.'s suit was filed, the judgment would be prima facie evidence of title in S.

3. TRESPASS TO TRY TITLE &⇒47(1)—JUDGMENT THAT PLAINTIFF TAKES NOTHING DIVESTS HIM OF ALL TITLE.

Legal effect of judgment for defendant in trespass to try title, that plaintiffs take nothing, is to divest the plaintiffs of whatever title they have at the time.

4. JUDGMENT &⇒682(1)—AGAINST PLAINTIFF IN TRESPASS TO TRY TITLE BINDS ALL SUBSEQUENT GRANTEES.

Judgment against plaintiffs in trespass to try title, with its effect of divesting them of whatever title they have at the time, is, under Rev. St. art. 7758, binding on all who thereafter deraign title through them.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by C. T. Becknell against H. H. Woodley. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Cary M. Abney and H. T. Lyttleton, both of Marshall, for appellant.

Bibb & Bibb, of Marshall, for appellee.

HODGES, J. This suit originated in a dispute over the location of a boundary line. The John Findley survey, of which the land involved is a part, was patented to John Findley in 1845. The appellant owns land on the north, and the appellee owns land on the south, of the disputed line; both tracts being in the Findley survey. The land in controversy covers about 20 acres. In 1917 the appellee filed this suit in the form of an action of trespass to try title. The appellant answered by a plea of not guilty, and further pleaded a title by adverse possession extending over a period of 10 years.

The case was tried without a jury, and the court found that the true boundary line was at the place claimed by the appellee. He further found that the appellant bought his tract of land and went into possession in 1890, and soon thereafter received a deed from his grantor; that he cleared and inclosed with a fence about 1½ acres of the land in controversy, and had continuously used and occupied the land so inclosed for more than 10 years before the institution of this suit, believing that the entire 20 acres was within the calls of his deed, and that the line claimed by him was the true boundary between his land and that owned by the appellee; that he also during that time had cut timber from the land lying outside of his inclosure. From these facts he deduced the following conclusions of law:

That the appellant had established title to the 1½ acres by limitation; that his title by limitation extended no further, for the following reasons:

"(a) That there could be only one constructive possession of the land in controversy at one and the same time, and that Becknell claiming by deed to the true boundary line, which includes the land in controversy, would destroy Woodley's claim to an erroneous boundary line, and would prevail over Woodley's claim.

"(b) That Woodley's claim to the land in controversy, being made upon the mistaken belief that the south boundary line, as claimed by him, was the true boundary line, did not give him any constructive possession to the land in controversy."

Upon those findings and conclusions the court rendered a judgment in favor of the appellee for all of the land in controversy, except the 1½ acres.

The appellant contends that judgment should have been rendered in his favor for the entire amount, for two reasons: (1) Because the plaintiff failed to connect himself with Findley, the original patentee; and (2) because under the facts proven upon the trial the appellant was entitled to judgment for all of the land in dispute under his plea of adverse possession. The appellee proved a paper title to the land in dispute back to Robert O. Lusk, who conveyed to Wm. Aker on April 20, 1846. For the purpose of connecting Lusk with Findley, the patentee, appellee offered in evidence the pleadings and judgment in a suit filed by E. L. Stratton, appellee's grantor, in 1913, against the unknown heirs of John Findley and Joseph Rowe. That was a suit to remove cloud from

title. In the original petition filed therein it was alleged that Findley had conveyed to Rowe, and that Rowe had conveyed to Lusk. The judgment rendered in that suit was for the plaintiff, granting the relief prayed for. That judgment was sufficient to establish, prima facie, a title connecting appellee with Findley, the patentee. The appellant offered in evidence an original petition filed, and a judgment rendered, in a suit by the children of John Findley in 1876 against H. A. Woodley, under whom appellant claims. The petition in that case shows that the plaintiffs therein were claiming title to the Findley survey by inheritance from their father. The judgment rendered was merely that they take nothing by their suit. The appellant contends that the legal effect of that judgment was to divest the heirs of John Findley of all title they had in the Findley tract of land in 1876, and that Stratton's suit against them as unknown heirs in 1913 was of no value in establishing the missing link in appellee's paper title.

The purpose of the suit filed by Stratton against the unknown heirs of Findley and Rowe was, not to secure a judicial transfer of title from those heirs, but to judicially determine and declare that their apparent title was in fact no title. Howard v. Davis, 6 Tex. 174; Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532; 1 Pomeroy, Eq. Jur. § 171. If the facts alleged by Stratton in his original petition were true, Findley during his lifetime had conveyed the land to Rowe, and Rowe had conveyed it to Lusk. The judgment rendered in that suit is founded upon the assumption that those facts were established upon the trial, and no effort was made in the trial of this case to show to the contrary. It may be conceded that the appellant was not bound by that judgment, not being a party to the suit, and was therefore at liberty to reopen and contest those issues of fact; but that was not done. The legal effect of the judgment against the heirs of Findley in 1876 was merely to determine that they then had no title. That judgment might be sustained upon proof of the very facts alleged by Stratton in his suit—that is, that the ancestor of those heirs had during his lifetime conveyed the property to other parties.

[1] The second proposition presents a different question. The court finds that appellant had been in the actual possession of the 1½ acres of the disputed land for more than 10 years prior to this suit, and that he had been claiming the entire tract as being within the calls of his deed. The evidence shows that during that time he had cut timber from that part of the land lying outside of his inclosure. The fact that his claim was founded upon the belief that the land was within the description contained in his deed, or that he was mistaken as to the boundary of his own land, was not sufficient to defeat the legal consequences of an adverse possession for the statutory period. Porter v. Miller, 76 Tex. 593, 13 S. W. 555, 14 S. W. 334; Id., 84 Tex. 204, 19 S. W. 467. The statute provides that adverse possession of a part of a tract of land may embrace as much as 160 acres. Article 5676, Rev. Civ. Statutes. As supporting the ruling of the court, the appellee refers to the following cases: Bracken v. Jones, 63 Tex. 184; Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153; and others of similar import. Those cases hold that a mere encroachment upon the land of another under a mistake as to the location of the true boundary line is not alone sufficient to give notice to the owner of an adverse claim extending beyond the limits of the actual inclosure. In this case the proof shows that the adverse claim was to the entire tract in dispute, that it originated at the time the appellant took possession, and that a tenant house had been erected on the 1½ acres. The case of Porter v. Miller, supra, is, we think, more in point upon this proposition. See, also, Fielder v. Houston Oil Co. (Com. App.) 208 S. W. 158.

The rule which gives priority to the constructive possession of the true owner applies only when the true owner is in actual possession of some part of the tract to which the land in dispute belongs. The record here shows that the owner was not in possession of any part of this land till after the period of limitation had been completed.

We are of opinion that the court erred in his conclusions of law, in holding that the appellee's constructive possession was superior to that arising from an actual possession of the appellant of a part of the disputed land. Whether the adverse claim of the appellant was of sufficient notoriety to support his plea of limitation is another question, and is one which was not passed upon by the trial court. The judgment, we infer from the conclusions of law filed, was based upon a different proposition.

We feel, therefore, that the case should be reversed, and the cause remanded, for the purpose of having that issue of fact determined in another trial; and it is so ordered.

### On Motion for Rehearing.

[2] Both the appellant and the appellee have filed motions for a rehearing in this case. The appellant insists that we erred in holding that the judgment recovered by Stratton against the unknown heirs of Findley and Rowe was sufficient, in connection with the remaining evidence, to show prima facie a title in the appellee. We have concluded, upon further consideration, that this contention is sound, and that the assignment based upon it should be sustained.

The appellee was the plaintiff in the court below, and upon him rested the burden of establishing his title to the land in contro-

versy. This he endeavored to do in the following manner: He offered in evidence a patent from the state to John Findley, dated July 20, 1845, for a survey of which this tract is a part; he next introduced a deed from R. O. Lusk to William A. Eaker, dated April 20, 1846; he followed this with a chain of paper title to E. L. Stratton, from whom the appellee purchased in October, 1913. Presumably for the purpose of supplying the missing link between Findley and Lusk, he offered in evidence the original petition and the judgment rendered in a suit filed by Stratton October 24, 1913, against the unknown heirs of John Findley and Joseph Rowe. That petition recited that the petitioner, Stratton, was the owner of the land in controversy, describing it as a part of the Findley survey; that he purchased it in August, 1908, for a valuable consideration, and was the owner and holder by and through a regular chain of title; that there is a break in the title, in that the records of Harrison county do not show how or by what means the title became vested in Robert O. Lusk, who sold to W. A. Eaker, but that in truth and in fact Lusk purchased the property from Joseph Rowe, who purchased it from John Findley, the original patentee. The petition further alleges that the plaintiff did not know what claim the defendant had upon the property, but that the deeds from Joseph Rowe to Robert O. Lusk and from John Findley to Joseph Rowe were not of record in Harrison county and are lost. It also alleged that there is a recital in the deed from Lusk to Eaker that the land belonged to Lusk by virtue of a purchase by Joseph Rowe from John Findley; that the deeds are lost, and the plaintiff was unable to prove the recital by the deed records of Harrison county. He prays for citation against the unknown heirs of John Findley and Joseph Rowe, and for a judgment vesting title to the property in himself. The judgment rendered in that case is thus recorded in the statement of facts:

"The judgment was offered in evidence, and recites: 'The defendant was cited by publication, and counsel duly appointed as required by law, and title vested in E. L. Stratton in fee simple, being the same property described in plaintiff's petition.'"

That judgment was admissible in this case only for the purpose of proving its rendition and the legal consequences which resulted therefrom. It was not evidence of the facts recited in the petition—that is, that Findley had conveyed to Rowe and Rowe to Lusk. McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260; Boehme v. Sovereign Camp, W. O. W., 98 Tex. 380, 84 S. W. 422, 4 Ann. Cas. 1019; Pratt v. Jones, 64 Tex. 694. Upon its face this judgment invested Stratton, not Lusk, with whatever title the heirs of Findley and Rowe held at the date of its rendition. Assuming that the lapse of time was sufficient to justify the presumption that Findley was dead when that suit was filed, the judgment would constitute prima facie evidence of title in Stratton, from whom the appellee purchased. It was not to be taken as evidence that Lusk had acquired any title.

[3, 4] The court found as a fact that in July, 1876, James Findley, John Findley, and Adeline Findley, the only heirs at law of John Findley, patentee, filed a suit in the district court of Harrison county against W. H. Woodley and W. L. Woodley, in the form of an action of trespass to try title, to recover the entire John Findley headright; that in November, 1879, a trial of that suit resulted in a judgment in favor of the defendants that the plaintiffs take nothing. The appellant offered this judgment in evidence in the trial below as proof that at the date of the rendition of the judgment in favor of Stratton against the unknown heirs of Findley and Rowe those heirs had no title which could be vested in Stratton. The legal effect of the judgment rendered in 1879 was to divest the heirs of Findley of whatever title they had at that time, and that judgment was binding upon them and all who thereafter deraigned title through those heirs. Article 7758, Rev. Civ. Stat.; Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427; French v. Olive, 67 Tex. 400, 3 S. W. 568. It is thus conclusively made to appear that, at the time Stratton sought to recover the title from the Findley and Rowe heirs, those heirs had no title; hence the judgment rendered in his favor was ineffectual as a link connecting him with the original patentee. If, however, he should be able to establish upon another trial, by other legal evidence, that John Findley, Sr., had conveyed to Joseph Rowe, and that Joseph Rowe had conveyed to Lusk, as alleged in Stratton's original petition, that would be sufficient to establish his chain of title.

The appellee insists that we erred in remanding this case for a trial upon the issue of the appellant's right to recover upon his defense of limitation. It is argued that the appellant, having based his adverse claim upon the deed, should not be permitted to extend his constructive possession beyond the boundaries named in his deed. Attention is called to the fact that in the case of Porter v. Miller, cited in the original opinion, the proof showed that the deed relied on by Mrs. Miller, the adverse claimant, contained a description which included the land there in dispute. That case was first decided by the Commission of Appeals and is reported in 76 Tex. 593, 13 S. W. 555. On a motion for a rehearing (see 76 Tex. 593, 14 S. W. 334) the Supreme Court modified the judgment of the Commission of Appeals, holding that the evidence of a title by limitation was sufficient to require that issue to be submitted to the jury, and the cause was reversed and remanded for another trial. The case was

again before the Commission of Appeals, and is found reported in 84 Tex. 204, 19 S. W. 467. It there appears that the facts as finally developed on the last trial show that the deed to Seneschal, the father of Mrs. Miller, whose adverse occupancy was the basis of her claim of title by limitation, did contain a description which might be construed as including the land then in dispute, and it seems that the Commission of Appeals based its affirmance of the judgment upon that fact. But in the opinion of Justice Gaines, reported in 76 Tex. 593, 14 S. W. 334, no such contingency seems to have been regarded as necessary. He says:

"It may be true that the possession of Seneschal (Mrs. Miller's father) cannot be extended by construction beyond the actual limits of the Moore survey. His deed from Levi calls for the west boundary line of the Moore survey as the west boundary of the land conveyed to him, and there are no calls either for natural or artificial objects in the deed which indicate that the west line was to be other than the true boundary of the original survey. Hence, if Seneschal did not have possession of any part of the land lying between the true line of the Moore and the line surveyed by Trott as that line, the statute of limitation cannot avail the defendants in this suit; but, if his possession did embrace any part of this disputed strip, it seems to us that his title to all the land claimed by him became perfect by virtue of the 10-year statute. The evidence makes it clear, we think, that Seneschal believed that his deed conveyed to him all the land to the line run by Trott, and leaves but little, if any, doubt that he claimed to that line. The statute then in force gave title to a naked possessor to 640 acres of land, including his improvements (Pasch. Dig. art. 4624), and we see no reason why Seneschal was not entitled to its benefit to the extent of his well-defined claim, provided he had actual possession for the requisite period of that part of the land claimed by him which lies west of the true line of the Moore survey."

The foregoing language makes it plain that the Supreme Court reversed this case, not upon the assumption that the disputed tract was within the calls of Seneschal's deed, but because the facts indicated that he had probably occupied a portion of it under a claim to a well-defined boundary.

The approval by the Supreme Court of the last judgment of the Commission of Appeals is not to be taken as an indorsement of the grounds upon which that court's affirmance was based; for that conclusion was correct upon either view of the law. The rule which limits the constructive possession of one holding under a deed to the lines described in his field notes, has no application in a case of this character. No part of the land here in dispute is within the calls of the appellant's deed. The proof shows that when the boundary line was correctly located the land in controversy was a part of an entirely different tract from that covered by his deed.

The fact that the appellant contended that his deed included the land did not lessen the legal consequences of his adverse possession. If the true owner has actual notice that his title to a definite boundary is disputed, or if the adverse occupant accompanies his possession with acts evidencing a hostile claim which are reasonably calculated to give such notice, there is no logical reason for withholding from that possession the legal consequences which ordinarily flow from adverse occupancy based upon possession alone. The fact that the adverse claimant believes that his deed covers the land does not, as a matter of law, destroy the constructive possession which under a naked possession might extend to a well-defined boundary.

We are therefore of the opinion that the appellee's motion should be overruled, and that the appellant's motion should be granted, and the case is reversed and remanded generally for a new trial.