EVANS et al. v. SMOOT et al.   (No. 10039.)*

(Court of Civil Appeals of Texas. Fort Worth. Dec. 9, 1922. Rehearing Denied March 3, 1923.)

1. **Appeal and error ⟨key⟩1071(1)—Failure to file findings and conclusions within time required not reversible error in absence of prejudice, where full statement of facts is filed.**

When a full statement of facts agreed to by counsel for all parties is filed with the record, the trial court's failure to file his findings of fact and conclusions of law within the time required by the statute is not reversible error, in the absence of a showing that appellants were prejudiced thereby.

2. **Husband and wife ⟨key⟩262(1)—Land conveyed to married woman presumed community property, in absence of stipulation or evidence to contrary.**

In the absence of a stipulation in a deed to a married woman, or other evidence, that the land was conveyed to her as her separate property, it is presumed to be the community property of herself and husband.

3. **Adverse possession ⟨key⟩112—Plaintiffs must establish title by preponderance of evidence.**

In trespass to try title to land claimed by adverse possession, the burden is on plaintiffs to establish such title by a preponderance of evidence.

4. **Adverse possession ⟨key⟩57 — Evidence held insufficient to establish title in plaintiffs' parents.**

In trespass to try title to a lot used by plaintiffs' father from 1893, in connection with an adjoining lot occupied by him and his wife under color of title until 1900, when they conveyed the latter lot to defendant and her husband, with whom they continued to live, occupying and using both lots until the father's death in 1901, after which his widow continued to live with grantees until her death in 1908, evidence *held* insufficient to show that the father's adverse possession of the lot in suit was continued by his widow until 1903, when the 10 years' period of limitation would have been complete.

Conner, C. J., dissenting.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit by D. B. Evans and others against Susan Smoot and others, in which defendants Mrs. Birdie O. Evans and others cross-complained. From a judgment for cross-complainants, plaintiffs appeal. Affirmed.

E. W. Bounds, of Fort Worth, and John W. Hill, of Breckenridge, for appellants.

Benson & Dean, of Breckenridge, for appellees.

DUNKLIN, J. D. B. Evans, Lydia Evans, a feme sole, W. C. Evans, Tillie Boyd, joined by her husband, Walter Boyd, and Josie Brown, joined by her husband, Jim Brown, instituted this suit in trespass to try title to recover an undivided five-sixth interest in lot 3, block 14, in the town of Breckenridge. Susan Smoot and her heirs and legal representatives, the residences of all of whom are alleged to be unknown, and Mrs. Birdie O. Evans, the surviving widow of C. N. Evans, deceased, and Oma Evans, Joe Rob Evans, Margaret Evans, and ,Charlie Evans (minor), children of C. N. and Birdie O. Evans, were all made parties defendants. Judgment was rendered denying plaintiffs a recovery and decreeing title to the property in defendant Mrs. Birdie O. Evans and her children, on their cross-action against the plaintiffs and against Susan Smoot and her heirs and representatives. From that judgment the plaintiffs have prosecuted this appeal.

Susan Smoot was the owner of the legal title to the property according to the deed records of Eastland county.

[1] By their first assignment of error, appellants insist that the judgment should be reversed for the failure of the trial judge to file findings of fact and conclusions of law within the period of 10 days from and after the adjournment of the term of court during which the cause was tried. The record shows that court adjourned on July 9, 1921, and there are contained in the record findings of fact and conclusions of law by the trial judge which were filed on July 27, 1921. Appellants' first assignment is based upon their bill of exception, which is duly approved by the trial judge, to the failure of the court to file his findings and conclusions within the 10 days' period mentioned. That bill of exception contains the statement that appellants, before the adjournment of the term and after the rendition of the judgment, requested the presiding judge to prepare findings of fact and conclusions of law, and did then and there present to the court certain findings of fact and conclusions of law which had already been prepared for the signature of the judge, and which findings and conclusions are set out in the bill of exception. The bill of exception was approved, with the explanation by the trial judge that he had already filed his findings of fact and conclusions of law, and the bill, as so qualified, was filed on September 30, 1921. The findings and conclusions of the trial judge which were filed by him appear in the transcript in this court, and appellants have filed no motion to strike them out, and in their briefs they have made no specific objection to a consideration of the same. Appellants insist that they had the legal right to have the findings and conclusions filed within the 10 days' period, and that by reason ,of a denial of that strict legal right, the judgment of the trial court should be reversed. They do not show or contend that they have suffered any inconvenience or injury by reason of the court's failure to comply with that statutory requirement to file such findings within the 10 days' period. A full statement of facts, agreed to by counsel for all parties to the suit, is on file here with the record, and it is well settled by the decisions of this state that when such a statement is filed, the failure of the court to file his findings of fact and conclusions of law, as required by the statutes, is not reversible error, in the absence of some showing that appellants have been prejudiced in fact by such failure on the part of the trial judge. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 521; Haywood v. Scarborough (Tex. Civ. App.) 102 S. W. 470; National Bank v. Stout, 61 Tex. 567; Huffman Imp. Co. v. Templeton (Tex. App.) 14 S. W. 1015; Umscheid v. Scholz, 84 Tex. 265, 16 S. W. 1065. Accordingly, appellants' first assignment of error is overruled.

The only claim of title by both plaintiffs and defendants was under the statute of limitation. Plaintiffs and all of the defendants except Susan Smoot claimed title to the property under the statute of 10 years' limitation. Susan Smoot and her unknown heirs were represented by counsel appointed by the trial judge, and their answers consisted of a general denial and a plea of not guilty. Those defendants have not prosecuted any appeal, although the recovery on the cross-action of Mrs. Birdie O. Evans and her children was against them as well as against the plaintiffs.

[2] On April 5, 1893, a deed of conveyance was executed to Mrs. Elvira C. Evans to lot 4, block 14, in the town of Breckenridge, in consideration of $80 cash and a promissory note for $80 to be paid by Mrs. Elvira C. Evans on November 1, 1893. Mrs. Evans was then the wife of J. M. Evans. The deed did not stipulate that the conveyance was made to Mrs. Evans as her separate property, and in the absence of such stipulation, and in the absence of any other facts tending to show that the lot was acquired as the separate property of Mrs. Evans, it became the community property of herself and husband. Block 14, in which lot 4 was situated, was 300 feet square, and another lot known as lot 3 in the same block adjoined lot 4. After

the execution of the deed to lot 4, J. M. Evans and his wife took possession of it and occupied it as their home for themselves and their children. Neither J. M. Evans nor his wife ever purchased lot 3, but after they moved upon lot 4 they began to use lot 3 in connection with lot 4. They had several children at the time they moved upon lot 4.

By deed dated June 11, 1900, and duly acknowledged by Mrs. Elvira C. Evans on the same date, and by J. M. Evans on September 29, 1900, for a recited cash consideration of $25 paid to the grantors by C. N. Evans and wife, Birdie O. Evans, J. M. Evans and wife conveyed said lot 4 to C. N. Evans and wife. C. N. Evans was the son of J. M. Evans and wife, and he was married to Mrs. Birdie O. Evans on November 19, 1899. After their marriage they lived in the same house with his parents on lot 4, occupying it as their home.

At the time J. M. Evans purchased lot 4, to wit, April 5, 1893, there was a small house on the lot into which they moved. Thereafter they made some additions to the house. Immediately after moving on the property, they inclosed lot 3 and lot 4 by two fences, one placed on the north and one on the south of the two lots, and connected those fences with the fences inclosing a lot on the west and a lot on the east of lots 3 and 4.

J. M. Evans died June 18, 1901, at which time all of his children had married and left, except Lydia, a daughter, and W. C. Evans, a son. After his death, his widow, Mrs. E. C. Evans, and her daughter Lydia, who was a dwarf, and W. C. Evans continued to live in the same house then occupied by C. N. Evans and wife. W. C. Evans married soon after the death of his father and left the home, since which time he has lived elsewhere. Mrs. E. C. Evans continued to live in the same home until her death, which occurred December 26, 1908, and C. N. Evans died February 6, 1909. After the death of C. N. Evans, Birdie O. Evans and her children continued to occupy lot 4 as their home, and for more than one year thereafter Lydia Evans, the dwarf sister of C. N. Evans, continued to live with her. After Lydia left, the home was occupied by Birdie O. Evans and her children alone.

As soon as J. M. Evans and his wife purchased lot 4, they began using lot 3 in connection with lot 4, using it for a garden, and also had a shed and chicken house thereon. After J. M. Evans and wife executed the deed of conveyance to lot 4, C. N. Evans and wife and J. M. Evans and wife all continued to use lot 3 until the death of J. M. Evans, which occurred in 1901, and after that time Mrs. E. C. Evans also used the garden in connection with the use of it by her son C. N. Evans up to the date of her death in 1908. A part of that time Mrs. E. C. Evans and her daughter Lydia occupied one portion of the residence on lot 4, and her son, and his family occupied the other portion; each family doing their own cooking. A portion of that time they all cooked and ate together.

C. N. Caldwell, who was well acquainted with the entire Evans family and who lived in Breckenridge in 1896, and was absent therefrom in 1898 and 1899 but moved back in 1901, testified that he was well acquainted with the property and has kept informed as to its occupants ever since. He testified that he, together with C. N. Evans, built a house on lot 3 in 1901 or 1902, but according to his best recollection it was in the year 1902. According to testimony of witnesses who lived in the town of Breckenridge and who were well acquainted with the Evans family, and some of whom had had business dealings with C. N. Evans, C. N. Evans was regarded as the head of the family after the death of his father. The statement of facts shows that neither J. M. Evans nor his wife ever paid any taxes on either lot 4 or lot 3; that C. N. Evans paid taxes on both those lots for the years beginning with 1897 and ending with 1909, such taxes being paid each year as they accrued; and that Mrs. Birdie O. Evans has paid taxes on both lots for each and every year as the same became due, beginning with the year 1910, and ending with the year 1920. Mrs. Birdie O Evans, on the 3d day of May, 1917, also paid back taxes on both lots and procured redemption tax receipts therefor for the years beginning with 1885 and ending with the year 1893.

Mrs. Birdie O. Evans continued in open possession of both lots up to about one year before the case was tried, when she sold lot 4 and gave a lease on lot 3, from which lease she has been collecting rents at the rate of about $250 per month. She testified that she never heard any one of the plaintiffs claim any interest in lot 3 until about one year before the trial.

The evidence tended strongly to show that C. N. Evans claimed ownership of lot 3 up to the date of his death, and that his widow has claimed the same as her own ever since his death. C. N. Evans and wife had four children, and after the death of her husband Mrs. Evans was appointed guardian of the estate of those children; but aside from their occupancy and use of the property, no evidence was introduced to show that they ever gave notice to any of the plaintiffs that they were claiming the property adversely to them.

The principal contention made by appellants here is that the evidence conclusively shows that the statute of limitation of 10 years in favor of J. M. Evans began in the year 1893 when he purchased lot 4, that the same continued until the date of his death, and that limitation so begun was continued in behalf of his surviving widow until it was complete. It is further insisted that title under the 10 years' statute of limitation having been thus acquired, the property belonged

to the community estate of J. M. Evans and his wife, and at the time of the death of Mrs. E. C. Evans passed to all of their children, share and share alike, thus vesting in plaintiffs an undivided five-sixth interest in the property, with the remainder in C. N. Evans and his heirs. It is insisted in this connection that the title having thus vested in all of the children jointly, neither C. N. Evans nor his widow or their heirs are in any position to claim title by limitation against them, by reason of the fact that they, being joint tenants with the plaintiffs, did not bring notice home to plaintiffs that they were claiming title adversely to them.

[3] This being a suit in trespass to try title, the burden was upon plaintiffs to establish that title by a preponderance of evidence, and if they did not discharge that burden the judgment cannot be disturbed, and the majority have reached the conclusion that the assignment now under discussion must be overruled.

[4] In the opinion of the majority, the fact that lot 3 was used by J. M. Evans in connection with lot 4, and that he sold lot 4 to his son C. N. Evans, and that nothing was said between them at the time indicating anything to the contrary, was a circumstance tending in some measure to show that he intended to relinquish to his son C. N. Evans the same right of possession of lot 3, used in connection with lot 4, which he himself had exercised. And the majority are of the opinion further that, to say the least, the evidence tended as strongly to show adverse possession in C. N. Evans after the death of his father as it did to show that the adverse possession which had theretofore begun with J. M. Evans was continued by his surviving wife, up to April 4, 1903, the date when the 10 years' statute of limitation, once begun in J. M. Evans, would have been complete. And as neither J. M. Evans nor his wife ever acquired title by the 10 years' statute of limitation, beginning with J. M. Evans at the time he purchased lot 4, plaintiffs inherited no title from them and are in no position to claim that C. N. Evans and his wife did not acquire title by limitation as against their codefendant, Susan Smoot.

Accordingly, the majority are of the opinion that all assignments of error must be overruled, and the judgment must be affirmed; and it is so ordered.

CONNER, C. J. (dissenting). I find myself unable to concur in the conclusion of the majority. As I read the evidence, it is undisputed that lot 3 in controversy was occupied, used, and held adversely to all the world by J. M. Evans and his wife, Elvira C. Evans, from about April 5, 1893, when lot 4 adjoining lot 3 was purchased and deeded to Elvira C. Evans, until the death of J. M. Evans, on June 18, 1901, some 8 years, 2 months, and 13 days; that for more than 2 years after the death of her husband, Elvira C. Evans, together with an afflicted daughter, occupied and used lot 3 as before, thus vesting in Mrs. Evans absolute title to lot 3, under our 10 years' statute of limitation; and that hence upon her death lot 3 descended to her heirs, share and share alike. And it is my further opinion that the evidence is wholly insufficient to show that Mrs. Birdie O. Evans, the surviving wife of C. N. Evans, deceased, at any time disputed the right of Elvira C. Evans to use and occupy lot 3 as she had during the life of her husband. The undisputed facts show that she made use of it without hinderance from C. N. Evans or his wife, Birdie O. Evans. There is no evidence sufficient in my judgment to show that either C. N. Evans or Birdie O. Evans occupied or used lot 3 adversely to Elvira C. Evans prior to her death. The use of lot 3 by Birdie O. Evans and C. N. Evans seems to have been permissive only. Or, if, in any view of the evidence, it can be said that Birdie O. Evans used the land in controversy adversely to the other heirs of Elvira C. Evans, such other heirs had no notice thereof. At no time do I find in the evidence where Birdie O. Evans claimed in their presence or in the presence of any other the sole right to lot 3, or the sole right to its use and occupancy. The only evidence, if it can be so termed, of such an adverse claim, is the fact that she paid taxes on lot 3 together with lot 4; but those taxes during all of those years were very small, and it has been expressly held that the payment of taxes is not sufficient to divest a cotenant of his interest. Therefore I am of the opinion that the judgment below should be reversed and judgment here rendered for appellants, establishing their interest, and for partition as prayed for in their petition.

### On Motion for Rehearing.

DUNKLIN, J. The majority was in error in their opinion on original hearing in stating that C. M. Caldwell testified that he, together with C. M. Evans, built a house on lot 3 in 1901 or 1902. The record shows that the testimony of that witness was that the house so built was on lot 4, instead of lot 3. While the record shows, as stated in our original opinion, that all the taxes on lots 3 and 4 were paid by C. N. Evans and wife beginning with the year 1897 and ending with the year 1920, the statement of facts shows that D. B. Evans testified that he gave his brother $10 "to pay the taxes," and that at one time he furnished his sister-in-law money with which to pay the taxes. However, the witness does not fix the year in which he made either of those payments, nor does he state whether it was for the purpose of paying taxes on lot 3 or lot 4, or both, and, as shown in our original opinion, C. N. Evans died February 6, 1909. The statement of facts fur-

ther shows that Mrs. Birdie O. Evans qualified as guardian of her minor children in the year 1919.

With the corrections noted, the motion for rehearing is overruled by the majority of the court.

CONNER, C. J., dissenting, as upon original hearing.