## MORAN et al. v. STANOLIND OIL & GAS CO.

### No. 13891.

Court of Civil Appeals of Texas. Fort Worth.

April 7, 1939.

Rehearing Denied May 12, 1939.

B. Reagan McLemore, of Longview, for plaintiffs in error.

Turner, Rodgers, Winn & Sellers, M. B. Solomon, and George S. Terry, all of Dallas, and Clay Tallman and Leslie A. Tompson, Jr., both of Tulsa, Okl., for defendant in error.

SPEER, Justice.

Stanolind Oil & Gas Co., a corporation, succeeding the original plaintiff, Yount-Lee Oil Co., sued M. M. Moran, A. A. Castleberry, Jr., and C. W. Castleberry, individually and as guardian of the estate of Mrs. A. A. Castleberry, non compos mentis, and as administrator of the estate of J. N. Castleberry, deceased, in trespass to try

title of oil, gas and mineral rights in and under about four and one-half acres of land, a part of the Wm. Robinson Headright Survey in Gregg County, Texas.

The parties will carry the same designation here as in the trial court.

An order of the court was entered on October 2nd, 1936, substituting plaintiff, as such, in lieu of Yount-Lee Oil Co., and on August 7th, 1937, it filed its Third Amended Original Petition, upon which the trial was had.

Plaintiff's pleadings are in the usual form for trespass to try title, with additional allegations of five, ten and twenty-five year statutes of limitation, covering seven-eighths interest under oil and gas leases to minerals in place in and under the following described lands in Gregg County, Texas: "Lying and being situated about six miles northwest of the town of Longview, being a part of the Wm. Robinson Survey, and beginning in the north boundary line of said survey, it being the northeast corner of the Hunter 300-acre home tract; thence south 1-½ degrees west 471 varas to the Gilmer road; thence northwest with said Gilmer road to the north boundary line of the Robinson Survey; thence east to the place of beginning, containing 4-½ acres of land, more or less."

The defendants answered with general demurrers, general denials and pleas of not guilty.

A jury trial was demanded, but at the conclusion of the testimony the court instructed a verdict for defendants. The plaintiff filed motion for judgment non obstante veredicto, and after notice, appearance and hearing, the court sustained the latter motion and entered judgment for plaintiff for title and possession of the seven-eighths leasehold estate in the oil, gas and minerals in and under the lands described in its pleadings. The defendants timely perfected an appeal by means of the writ of error.

By the description of the tract in controversy it will be observed to be in the Robinson Survey, in a triangular or wedge shape, in the northeast corner of what is called in the record the Hunter home place of 300 acres, and is cut off from the remainder of the tract by the Gilmer Highway.

The record shows that by deed dated December 10th, 1904, recorded June 11th, 1930, L. G. Lee and wife, Annie E. Lee, acquired a tract of 140 acres in the Robinson Survey, off the north end of the Hunter 300-acre tract out of that survey; that A. A. Castleberry then owned 148 acres out of the same survey. Castleberry's northwest corner called for the northeast corner of the Hunter 300-acre tract. As before stated, Lee's northeast corner was the same. That corner is definitely located in the conveyances, and there is no controversy about it. Both Castleberry and the Lees have been in peaceable and adverse possession of their respective tracts since they acquired them, unless the Lees had lost the tract under consideration to Castleberry by limitation, which matter we shall later discuss.

Plaintiff claims title to the leasehold interest by virtue of an oil and gas lease from Annie E. Lee and the surviving children of L. G. Lee (he having previously died intestate), dated September 19th, 1930, to J. E. Farrell; assignment of lease from Farrell to Arkansas Fuel Oil Co.; and a quitclaim deed from Arkansas Fuel Oil Co. to plaintiff, dated October 15th, 1936. The foregoing instruments included within their calls the small tract in controversy.

Plaintiff also claimed the leasehold interest in the small tract by virtue of a lease from A. A. Castleberry, Sr. (who owned all the land lying east of the Lee tract), to B. A. Skipper, dated April 26th, 1930. Castleberry's wife did not join in that lease, she having been previously adjudged insane. In that lease is found this provision: "It is intended herein to convey all land that I own in the above mentioned H. R. Survey (Robinson), being 148 acres of land, more or less, it being the intention to include all lands owned or claimed in said survey or surveys." An assignment of said lease by Skipper to W. W. Lechner; assignment from Lechner to J. E. Farrell; assignment from Farrell to Yount-Lee Oil Co.; assignment from Yount-Lee Oil Co. to Wright Morrow; and an assignment from Morrow to Stanolind Oil & Gas Co. Plaintiff also introduced in evidence an instrument executed and acknowledged by A. A. Castleberry, Sr., dated January 20th, 1931, a part of which reads: "I, A. A. Castleberry, Sr., for and in consideration of one ($1.00) Dollar cash in hand paid to me by J. E. Farrell, hereby stipulate and agree that in that certain oil and gas lease executed by me on the 26th day of April, 1930, to B. A. Skipper, as lessee, recorded in Book 4, page 382, Records of Gregg County, Tex-

as, covering certain land in the Wm. Robinson Survey, that said land has been surrounded by a fence for the past 25 years and is bounded by said fence and by the farms of the following persons: R. K. Johnson farm on the north; Mrs. Lee farm on the west; Mrs. Killingsworth farm on the east; A. A. Castleberry farm on the east. I have owned said farm for 50 years and during that time have farmed same and raised crops thereon and have paid the taxes as they became due and so far as I know no persons have ever disputed my title * * *."

The Skipper and Lechner assignments, above referred to, do not contain the entire clause referring to the intentions of grantors, as is found in the Castleberry lease mentioned. The two assignments each contain this provision: "It is intended herein to convey all land that I own in the above mentioned H. R. Survey, being 148 acres of land more or less."

There is no agreed common source of title shown in the record. For the purpose of showing the common source, plaintiff proved by L. G. Castleberry, one of the defendants, that the tract in controversy was originally included in the L. G. and Annie E. Lee tract, under their deed from the Hunters, and that his father, A. A. Castleberry, Sr. (then dead), claimed to have acquired title to it from the Lees; that the witness, for himself and in his dual fiduciary capacity, as well as the other heirs of A. A. Castleberry, Sr., claimed the mother's community interest in the tract of land in controversy.

The defendant, Moran, claimed the leasehold interest in the 4½-acre tract under and by virtue of an oil and gas lease from A. A. Castleberry, Sr., dated March 18th, 1931, in which lease the 4½-acre tract was described by metes and bounds, as it is in plaintiff's petition.

Neither of the defendants offered any testimony whatever, but rested upon the conclusion of plaintiff's evidence. As above stated, the verdict rendered by the jury in favor of defendants was upon a summary instruction from the court to that effect, and subsequently the court sustained plaintiff's motion for judgment irrespective of that instructed verdict.

The defendants are plaintiffs in error here, seeking a reversal of the judgment entered on plaintiff's motion non obstante veredicto.

Defendants have presented four assignments of error, and eight propositions relating to them. By these propositions defendants treat the title attempted to be proven by plaintiff as being mainly from the chain of conveyances growing out of the lease from Castleberry to Skipper, which, as we have shown, covered 148 acres, more or less, therein described by metes and bounds, which description does not cover the tract in controversy; but that is the instrument which contains the explanation of the intentions of the grantor referred to above, which expression is called by defendants in their brief, the "Mother Hubbard" clause, while plaintiffs refer to it as the "Cover all" clause. Perhaps to show no partiality in choice of names, we should refer to it as the "Intention clause."

By their assignments, defendants contend: (1) That because the field notes in the Castleberry lease definitely described a tract of land in which there was no ambiguity, the additional clause expressing intention to convey all lands owned by grantor in the Robinson Survey, was of no effect and could not be held to convey additional land to that described in the field notes; (2) because if the intention clause contained in the Castleberry to Skipper lease covered the tract in controversy, the title thereto stopped in J. E. Farrell, since his assignment to Yount-Lee Oil Co. contained no such clause; (3) because the undisputed testimony showed that title to the 4½ acres had ripened into limitation in favor of Castleberry and out of the Lees the court should not have given plaintiff judgment on the ground that it had acquired the record title by mesne conveyances from the Lees; and (4) that such record title as plaintiff showed was acquired subsequent to the institution of this suit by the plaintiff, which it succeeded under orders of the court, and therefore it was error for the court to enter judgment in plaintiff's favor on its motion.

It is contended by plaintiff that it acquired the title from both sources, that is, from the Lees, who unquestionably held the record title, as well also such interest as may have been acquired by Castleberry, Sr., by virtue of limitation.

There are many obstacles which may enter into any title plaintiff may have acquired by virtue of the chain of instruments from A. A. Castleberry, Sr.

There was no title to the 4½ acres by limitation or otherwise, shown in Castleberry, Sr. when he leased to Skipper. A chain is no stronger than its weakest link, and since it was not shown that Castleberry, Sr., had a title, none was shown to have passed from him. If it be conceded that Castleberry, Sr., had a limitation title, there is some evidence contained in the stipulation agreement made by him with Farrell, that the tract of land to which he held record title, adjacent to the disputed tract, was his homestead and his wife did not join in the lease to Skipper. She is shown to have been of unsound mind since 1920, and obviously was laboring under that affliction at the time her husband attempted to lease the property to Skipper. In addition to these things, is the question of whether or not the intention clause in the Skipper lease covered title to the tract in question. As above indicated, we hold the chain of title shown through the Lees supports the court's judgment, and we therefore do not express any opinion in regard to the strength of the other claimed chain of title.

▌▌ The evidence introduced by plaintiff (defendants offered none) shows that any claim Castleberry, Sr., ever had grew out of limitation as against the Lees; plaintiff also claims under the Lees; hence they are bound to be the common source. It is fundamentally true that where the source of title of each of the litigants emanates from the same person, neither need go farther back in his chain than that source. This is true whether the common source is disclosed by the pleadings of all parties, by agreements and stipulations or by proof upon the trial. Luckel v. Sessums, Tex.Civ.App., 71 S.W. 2d 579, writ dismissed; Simmons Hardware Co. v. Davis, 87 Tex. 146, 27 S.W. 62; Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551.

▌ The evidence shows that the Lees acquired 140 acres which embrace the 4½ acres in controversy within field notes, in 1904, and immediately went into possession of it and lived on the land as their homestead continuously. Mrs. Lee was still living on the premises at the time of the trial, her husband having died intestate some years previously. From the evidence it is uncertain that all of the 4½ acres was ever fenced by the Lees; it appears that there was an old community road in the vicinity of this small tract and a rail fence was built somewhere near it, and when the new highway was constructed a little further east, the fences were not moved; the evidence shows that the Lees claimed the "little strip of woods" shown to be the 4½-acre tract, even though it was not inside the rail fence inclosure; the witness said he knew where the northeast corner of the Hunter tract was, and that no one ever interfered with their claims of title; this witness, one of the Lee heirs, said the new highway cut off a small portion of the land that had always been considered a part of the Lee 140 acres; he also testified that he did not know whether Castleberry, Sr., claimed all east of the highway after its construction. The record does not show that the 4½ acres were inclosed by the fences of Castleberry; insofar as appears from the record, it was unfenced by any person. It is definitely shown that Castleberry's northwest corner was common with the northeast corner of the Hunter 300-acre home place, that also being the northeast corner of the Lee 140 acres; Lee's deed, however, was not recorded until in 1930, yet Mrs. Lee was one of the Hunter heirs and received this 140 acres in the partition of the Hunter property. The deed to Sara W. Hunter for life with remainder to her children (including Annie E. Lee) was executed, delivered and recorded in January, 1885, and Castleberry, Sr., had actual and constructive notice thereof, along with the location of its northeast corner; in fact, his beginning corner is recited to be there. Irrespective of the fact that the partition deed from the other Hunter heirs to L. G. and Annie E. Lee was not of record from 1904 to 1930, her rights in the whole 300-acre tract were fixed by the 1885 deed. The evidence shows that some of these joint tenants were in actual, notorious and adverse possession of the 300 acres at all times since 1885, even though it was not all inclosed by fences. Such possession and use of a substantial portion thereof is actual and constructive notice to the world that they were in possession and claiming all land described in their deed. The general rule in such cases is announced in 2 Tex.Jur., page 183, in this language: "The claimant having had actual possession of a part of the land which is described in his deed, it may be concluded that title has been perfected (by limitation) to the extent of the described boundaries." To the same effect are the cases of Porter v. Miller, 84 Tex. 204,

19 S.W. 467; Talliaferro v. Butler, 77 Tex. 578, 14 S.W. 191; Village Mills Co. v. Houston Oil Co., Tex.Civ.App., 186 S.W. 785, 801, reversed by Supreme Court on other grounds, 241 S.W. 122; Temple Lumber Co. v. McFarland, Tex.Civ.App., 264 S.W. 298, writ refused.

The plaintiff made a prima facie case by proof of its title to the tract in controversy. The defendants resisted the claims of plaintiff only by the plea of not guilty. They filed no plea of limitation in answer to plaintiffs' action, and, of course, offered no evidence on this or any other point in the case. The contention of defendants here is that plaintiff failed to prove its title. Under our statutes, defendants could have offered any available evidence against plaintiff's claim, under their plea of not guilty, except that of limitation. Article 7373, R.C.S. Their only claim here of title was one of limitation acquired as against the Lees. The evidence offered by plaintiff does not indicate that the Lees lost the property to Castleberry under limitation. The testimony of the defendant, C. W. Castleberry, offered by plaintiff, went no further than to show that the Castleberry heirs claimed the tract by limitation, yet there is not a scintilla of evidence showing the title in them had ever ripened by prescription. There is nothing in the record to show the nature of possession claimed, nor the length of time since they began claiming it, but it is certain that their deed did not include it. We think plaintiff's evidence was sufficient to have warranted an instructed verdict in its favor, and therefore, even if the court had previously instructed a verdict for defendants, it was entirely proper, under the circumstances, to enter judgment non obstante veredicto, as was done. The assignments challenging that action are overruled.

In the view we take of this appeal, plaintiff cannot rely, for support of its judgment, upon the theory that it acquired a good title through the Castleberry chain, since, as we have shown, it did not prove Castleberry, Sr., ever had a title; but all of the testimony introduced relating to that chain was admissible to show, among other things, the probable interests defendants had therein, and to ultimately divest out of them the claimed interest, if any.

Reverting to the chain of title from Lee, relied upon by plaintiff, we observe that the quitclaim deed from Arkansas Fuel Oil Co. to plaintiff was acquired after the institution of this suit by plaintiff's predecessor. The record does not show the date on which the suit was instituted, nor the nature of the title originally relied upon by the then plaintiff. But by an order of the court, entered on October 2nd, 1936, plaintiff was substituted as such for the former plaintiff in the case, Yount-Lee Oil Company, having acquired the last named party's interest in the subject matter. The present plaintiff then received a quitclaim deed from Arkansas Fuel Oil Co., and thereafter, on August 7th, 1937, filed a Third Amended Original Petition, claiming the title, as shown by us in the early part of this discussion. This pleading succeeded all previous pleadings in the case, and was the one upon which trial was had. From the dates shown, of the order substituting plaintiff, the acquisition of the quitclaim deed and the amended pleadings, we think it obvious that the filing of the amended pleading was the beginning of the cause of action. If this be true, the costs accrued previous to that filing should be taxed against the plaintiff, upon a proper motion for that purpose. The plaintiff did not plead the nature of its title, in the amended pleading, nor was it required to do so, but could rely as it did upon the statutory provisions for trespass to try title. The amendment appears to have been necessary because plaintiff was required to recover, if at all, upon the title owned at the time of the institution of the suit. Having acquired the last instrument relied upon as a chain in its title after the original institution of the suit, it could not have recovered thereon under the former pleadings. No objection was urged upon the trial to the introduction of the quitclaim deed in evidence, nor do we think that an objection thereto would have been good under the pleadings upon which the trial was had.

Enough has been said herein to indicate that we have carefully considered each of defendants' assignments and the propositions thereunder; but we find no error shown and they must be overruled.

The judgment of the trial court is correct, and is therefore affirmed.