GALVESTON COUNTY v. B. S. TANKERSLEY ET AL.

1. The title of a county to school lands, the patent to which it had received
   from the State before the adoption of the present Constitution, was not
   divested by Section 8, Article 9, of that instrument ; that section could
   only affect such school lands as had not been patented.
2. Where the meanders of a river are called for in a survey, and also courses
   and distances, the former will control.

ERROR from Hood.    Tried    below    before    the    Hon.
Charles Soward.

Galveston county brought this suit for the purpose of
recovering possession of a part of one of her leagues of
school land, upon which she alleged the defendants were
trespassing.    The defendants denied the trespass, and
claimed severally portions of the land which they oc-
cupied as pre-emptors, alleging that the pre-emption
claims occupied by each of them were outside of the
boundaries of plaintiff's land.    The patent from the State

to Galveston county described the land sued for as one league of land, beginning at the northeast corner of a survey made by Jose A. Hernandez, from which a Spanish oak marked J bears south 57° east 3 varas, another marked I bears south 59° east 3 varas'; thence up the river, with its meanders, north 60° east 850 varas, south 43° east 1700 varas, north 57° east 1150 varas, north 15° east 1720 varas, north 41° west 2100 varas, north 31° west 1410 varas, to the northeast corner at the mouth of a branch, from which an elm marked M bears south 62° east 3 varas, and a Spanish oak marked N bears south 54° east 3½ varas; thence south 60° west at 9220 varas, the northwest corner in prairie; thence south 30° east at 2300 varas, Squaw creek at 2500 varas, the southwest corner, from which an elm marked T bears south 62° east 90 varas; thence north 60° east 145 varas, recrosses Squaw creek at 5550 varas, the beginning.

The evidence showed that if the league be surveyed on the ground, making the Brazos river the line from the beginning corner to the second corner at the mouth of the branch on the river, then the land claimed by defendants would be included in and conveyed to plaintiff by the patent. But if the call for the courses and distances of the meanders of the river are followed, in disregard of the call for the river, then they were not upon the land patented to the county.

Verdict and judgment for defendants, Tankersley *et als.*

*S. H. Renick,* for plaintiff in error.—1. The doctrine is too well settled to admit of any controversy at this late day, that calls for natural objects, such as a river or mountain, will control calls for course and distance. (Urquhart v. Burleson, 6 Texas, 503; Robertson v. Mosson, 26 Texas, 248; Hubert v. Bartlett and Heirs, 9 Texas, 97, 103.; Anderson v. Stamps, 19 Texas, 460.)

The cases of Booth v. Strippleman and Booth v. Up-
shur, 26 Texas, recognize the rule in its full extent, that
natural objects control calls for course and distance; and
they only decide that an imaginary or unmarked line,
called for in a place where it never existed, cannot control
calls for course and distance; but in Booth v. Stripple-
man one line was prolonged 540 varas beyond the dis-
tance called for, so as to reach a natural object called for,
viz., Angelina Lake.

The Constitution does not divest the title out of the
counties.

The first clause of Section 6, Article 9 (Pas. Dig. p.
1120), only declares "that all the lands and other pro-
perty heretofore set apart and appropriated, or that may
be hereafter set apart and appropriated, for the support
and maintenance of public schools, constitute the public
school fund." This section does not include the school
land granted to the counties. Three leagues of land
were granted to each county for the purpose of estab-
lishing a primary school or academy in said county
(Pas. Dig., Art. 3436)—not a public school. Afterwards
a fourth-league was granted, to be sold for the purpose
of procuring "scientific endowment" (apparatus), one-
half to be given to a primary school or academy, and
the remainder of the endowment to be equally distributed
among the common schools of the county. (Pas. Dig.,
Art. 3476.) So that none of these lands are touched by
this section.

Section 8, Article 9, of the Constitution, provides that
"The public lands heretofore given to counties shall be
under the control of the Legislature, and may be sold,
under such regulations as the Legislature may prescribe;
and in such case the proceeds shall be added to the pub-
lic school fund." (2 Pas. Dig., p. 1121.)

I contend that this section does not divest the title

out of the county of Galveston, but only empowers the Legislature to have the lands sold, and to add the amount realized at such sale to the public school fund, and until the Legislature acts the title remains in the county.

But if the constitutional provisions above referred to were intended to divest the title to the school lands, granted to the counties in their corporate capacity, out of them, and vest it in the State, then we contend that those provisions are in violation of the Constitution of the United States, and so far void.

Each organized county is constituted a corporation. (Pas. Dig., Art. 1044.) And all deeds, grants and conveyances made to a county by its corporate name, are effective and valid to convey all such interest as the grantor possessed. (Pas. Dig., Art. 1051.) And all contracts made with counties are valid. (Pas. Dig., Art. 1053.) And a county is capable of taking and holding property in trust under a will. (Bell County v. Alexander, 22 Texas, 359.)

The counties are by these sections as fully empowered to contract as a natural person. And we cannot perceive any reason why their contracts are not as much protected from interference on the part of State authorities by the constitutional prohibition upon the States as any other contracts. The people of the United States have declared, in the most authoritative manner, "That no State shall pass any law impairing the obligation of contracts." (Constitution, Article 1, Section 40.)

Invoking the salutary principle embodied in these provisions as a broad shield for the protection of the rights of counties and other corporations, as well as individuals, let us proceed—

1. To inquire whether or not the grant of lands to the county of Galveston for the purpose of establishing a primary school or academy in the limits of that county is

a contract.   Of this there can be no doubt.   The land was granted to the counties in fee.   They were required, as a condition precedent to securing the grant, to have the land claimed severed from the public domain by a survey (Pas. Dig., Art. 3464); to have the field notes recorded (Pas. Dig., Art. 3466), and return them to the General Land Office; and for this surveying the county paid. (Pas. Dig., Art. 3477.)   And the land so surveyed was to be patented to the counties.   (Pas. Dig., Arts. 3471, 3472.)   And these patents or designation of the school land are fully recognized as grants by the Constitution of the State of Texas, Article 10, Section 3.   (Pas. Dig., p. 71.)

They possessed, then, all the requirements of a grant, viz.: a grantor, grantee, a thing granted, and a consideration.   And a grant of land is an executed contract, resting in perfect obligation, and is protected from infringement by the Constitution of the United States.   (Fletcher v. Peck, 6 Cranch, 87; Terrett v. Taylor, 9 Cranch, 43; Trustees of Dartmouth College v. Woodward, 4 Wheaton, 570.)

We have shown that these grants are upon a consideration, but this is not necessary to entitle them to the protection of the constitutional prohibition.

2. Was the corporation called Galveston county capable of taking?   This is sufficiently answered by reference to the statutes, and the case of Bell County v. Alexander, 22 Texas.

3. Is there anything in the nature of the grant, or in the character of the grantee, to change or create an exception to these general rules?   We think not.   The grant is for a charitable use, but such grants are protected quite as strongly as any others.   (Trustees of Darmouth College v. Woodward.)   Now, is there anything in the character of the grantee to change this salutary rule, or to prevent the

county from invoking the provisions of the Constitution of the United States as a shield to protect her right of property from violation by State authority? In the case of Dartmouth College v. Woodward, 4 Wheaton, 577, the court uses this plain language: "It may also be admitted that corporations for mere public government, such as towns, cities and counties, may in many respects be subject to legislative control. But it will hardly be contended that in respect to such corporations the legislative power is so transcendent that it may at its will take away the private property of the corporation or change the use of its private funds acquired under the public faith. Can the Legislature confiscate to its own use the private funds which a municipal corporation holds under its charter, without any default or consent of the corporators? If a municipal corporation be capable of holding devises and legacies to charitable uses (as many municipal corporations are), does the Legislature, under our limited form of government, possess the authority to seize upon those funds and appropriate them to other uses, at its own arbitrary pleasure, against the will of the donors and donees? From the very nature of our government, the public faith is pledged the other way, and that pledge constitutes a valid compact, and that compact is subject only to judicial inquiry, construction and abrogation."

No briefs are found for defendants in error.

OGDEN, P. J.—This suit was instituted by the county of Galveston against several defendants in trespass to try title to certain land in Hood county. Galveston county claims the land as a part of one of her school leagues, patented to her in 1849. The defendants claim the land by virtue of their pre-emption rights. They

also claim that the land in controversy is not covered by plaintiff's patent. There is, however, a preliminary question presented by the defendants' plea in abatement which requires notice in this opinion. This suit was brought by Galveston county in 1867, and, on the adoption of our present Constitution, the defendants interposed a plea in abatement, alleging that since the institution of this suit, and since the filing of their answer, the title to the land sued for and claimed by plaintiff had passed out of Galveston county and become vested in the State of Texas by the new Constitution. We do not consider that it was the purpose and intent of the framers of the Constitution to cancel all the solemn contracts made with the several counties in regard to the school land.

But we do not hesitate to say, that if such was the purpose and intention of the convention, still they had no power or authority to do so. These grants were solemn acts of a contract made with the several counties, and this contract with Galveston county was duly executed years before the adoption of the Constitution. The State had parted with the title to a body corporate, capable of receiving and holding title to land, and she has not the power or authority, under the Constitution of the United States, to recall her grants or violate her executed contracts at pleasure. (Fletcher v. Peck, 6 Cranch, 87; Trustees of Dartmouth College v. Woodward, 4 Wheaton, 570.) In the latter case the court says: "A contract is a compact between two or more persons.    *    *    A grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert it." In the same case the court says: "It may also be admitted that corporations for mere public government, such as towns, cities and counties, may in many respects be subject to legislative control. But it will hardly be contended that, in respect to such corporations,

42

the legislative power is so transcendental that it may, at its will, take away the private property of the corporation, or change the use of its private funds." We think the Supreme Court of the United States has settled the question of the power in the State to violate a contract or recall a grant. But we do not interpret Article 9 of the Constitution as intending to annul its executed grants. There were many counties that had not had patents issued, and that act might prevent the further issuance of patents; besides the grants were made for school purposes, and the Legislature might very properly control the schools and the school fund, at least so far as to insure its proper application to the purposes for which the land was granted. We think Galveston county had a right to prosecute her suit to final judgment, and, in case she obtained a judgment, the right to hold the land in her own name for the purposes for which it was granted.

The other only question which requires notice here is in regard to the boundary. Appellant admits that the appellees have a good title for the lands occupied by them, unless they are on the Galveston county league; and appellees virtually admit that if they are on the Galveston league, then they have no right to recover. There is no dispute about any portion of the boundary, excepting on the northeast end of the Galveston county survey, which fronts on the Brazos river.

There seems to be a conflict in the calls for this line as set out in the patent, since it calls for the meanders of the river and also for courses and distances, and these do not correspond with each other. The calls in the patent for the northeast boundary of the survey are as follows: beginning at a designated point and running thence up the river with its meanders north 60° east 850 varas, south 43° east 1700 varas, north 57° east 1150 varas, north 15° east 1720 varas, north 41° west 2100 varas, north 31° west

1140 varas, to the northeast corner at the mouth of a creek. Now it is apparent from the evidence and admissions of the parties, that if the river be meandered for the northeast boundary of the survey, then the calls for the courses and distances to form the same line must be abandoned; and if the meanders of the river be abandoned, and the courses and distances be followed, then there will be remaining between the northeast boundary of the Galveston county league and the river several small tracts of land, on which the appellees have settled. There can be no doubt that the locator intended to include all the meanders of the river from the southeast to the northeast corners of the survey, both of which extended to the river. The intent of the locator and surveyor may also be gathered from the form of the survey, which is the legal form for surveys fronting on navigable streams. It is, however, very evident that the surveyor never run this line, since, if he had not intended to make the survey follow the river, he would have run a straight line from one corner to the other. There can be no object for so many angles unless it was upon the supposition that they would follow the meanders of the river. But the lines were never run, for no surveyor's marks can be found on the designated lines; besides, if they had been run, they would have been found to cross the river in more than one place, and leave small tracts of land along the river, surrounded by the river and the Galveston county survey. These facts show conclusively that no line was run as called for by the courses and distances, while the patent calls for the meanders of the river. What, then, is the rule for determining the boundary?

The doctrine that wherever there is a conflict in the calls, or when the true line is uncertain, natural objects, such as rivers or mountains, will control calls for course and distance, has become too well settled to be ques-

tioned now. In the cases of Urquhart v. Burleson, 6 Texas, 503; Robertson v. Mason, 26 Texas, 248; and Booth v. Strippleman, 26 Texas, 441, this question was reviewed in the light of all the authorities and settled beyond controversy; and in the case of Anderson v. Stamp, 19 Texas, 460, it is said the object to arrive at is the intent of the grantor.

We think the certain natural boundary of the river called for in this patent must control the evidently unknown, conflicting and absurd calls for course and distance. It was beyond question the intention of the grantor and grantee to have the patent cover the land within the bend of the river, and to have the boundary defined by that natural and certain object; and if the survey contains a few more acres of land than the patent calls for, it will not vitiate the grant nor authorize trespassers within its known boundary.

We think the verdict of the jury contrary to the law and the evidence, and that the court erred in overruling the motion for a new trial.

The judgment of the District Court is therefore reversed and the cause remanded.

REVERSED AND REMANDED.