76  593
84  204

---

### G. L. PORTER v. T. E. MILLER AND WIFE.

No. 2862.

1. **Boundary Line—Fact Case.**—See testimony declared satisfactory to the location of a dividing line between two old surveys.

2. **Limitation—Fact Case.**—See testimony declared insufficient to support the defense of limitation under any of the terms of limitation.

#### ON REHEARING.

3. **Limitation—Constructive Possession.**—Survey of a division line between two surveys was made in 1838. By mistake the line was placed 347 feet too far west. Possession of the land in dispute by the owner of the survey east of the said line was shown to have been actual as to a part; no possession was shown by the owner of the

survey on the west of the dividing line. *Held,* that actual possession by the owner of the survey on the east and extended across the line upon the disputed territory would by construction extend to the line as claimed so as to confer title upon ten years of such adverse possession.

4. **Same.**—The testimony not being satisfactory upon the matters involved in the defense of ten years adverse possession, the judgment is remanded for new trial.

APPEAL from Harris. Tried below before Hon. James Masterson. The opinion states the case.

*E. P. Hamblen,* for appellant, cited Blassingame v. Davis, 68 Texas, 595; Stafford v. King, 30 Texas, 271; Mayfield v. Williams, 73 Texas, 508; Luckett v. Scruggs, 73 Texas, 519; Russell v. Hunnicutt, 70 Texas, 659; Schaeffer v. Berry, 62 Texas, 705; Bracken v. Jones, 63 Texas, 184; Peyton v. Barton, 53 Texas, 298; Burton v. Cardwell, 53 Texas, 408.

*W. H. Crank,* for appellees, cited Bolton v. Lann, 16 Texas, 113; George v. Thomas, 16 Texas, 88; Charle v. Stafford, 13 Texas, 111; Wofford v. McKinna, 23 Texas, 46; Whitehead v. Foley, 28 Texas, 11.

ACKER, PRESIDING JUDGE.—George L. Porter sued in the usual form of trespass to try title to three acres of land, claimed by him as part of the Tierwester survey, in the city of Houston.

The defendants answered by plea of not guilty, the three, five, and ten years statutes of limitation, and specially that they and those under whom they claim have held the land described in the petition for more than forty-five years under established lines as part of the Luke Moore league.

The parties entered into the following agreement: "That the plaintiff has a regular chain of title from the sovereignty of the soil to himself, duly registered, for the land described in his petition; and that the defendants have a regular chain of title from the sovereignty of the soil to themselves to the land in the Luke Moore survey adjoining the plaintiff's land; and that the issue in this case shall be the true boundary line between the Luke Moore and Tierwester surveys dividing their lands. The defendants also reserving the right to plead any or all of the statutes of limitation."

The trial without a jury resulted in judgment for defendants on the question of boundary, and also on the defenses of three, five, and ten years limitation

Appellant's first contention is that "the court erred in adjudging the law of the case to be with defendants on the evidence adduced on the question of boundary."

It appears from the evidence that the northwest corner of the Moore is the northeast of the Tierwester, but no natural or artificial object is called for at this corner by the field notes. The southwest corner of the

Moore and the northwest corner of the Tierwester are established, well defined, and certainly identified on the ground. Following course and distance from these corners locates the boundary line between the surveys where the plaintiff claims it to be. In 1838 the west half of the Moore survey was subdivided by H. Trott, district surveyor, for the estate of Stephen F. Austin, into tracts of from 88½ acres to 200 acres. Trott made a plat of the subdivisions, which was recorded in Book C of the records of Harris County. The northwest lot, or subdivision designated No. 1, contained 88½ acres, the north half of which became the property of A. Seneschal, the father of defendant Mrs. Miller, who inherited in 1872 the northwest one-fourth, or eleven and a fraction acres of the 44¼ acres owned by her father.

In 1842 the Seneschal 44¼ acres tract was surveyed by Bringhurst, county surveyor, who made a map or plat of his survey, introduced in evidence, which does not show whether he recognized and adopted the line run by Trott in 1838 as the boundary line between the two surveys or not. Up to 1860 the line run by Trott as the west boundary line of the Moore was generally recognized as the boundary line between the surveys. In 1860 Gillespie, an experienced surveyor, and Powers, then county surveyor, surveyed the Moore league and discovered that the line run by Trott was error, and the conflict has been recognized ever since. At that time the west line of the Moore (the boundary between the two surveys), commencing at the well established and identified southwest corner, could be easily traced by the marks on the trees as called for in the field notes for a mile and a half through the timber, until it struck the prairie about three-quarters of a mile from the land in controversy. Some of the marks along this line remained at the time of the trial. This line is about 347 feet east of the line run by Trott. Wood, an experienced surveyor, who had followed his calling as such in Harris County for twenty-five years, who was familiar with the boundary lines of the two surveys, and knew of the conflict between them ever since he had been in Harris County, assisted by Gillespie, surveyed the land in controversy, and for the purpose of determining the boundary between the two surveys began at the well established and identified northwest corner of the Tierwester and ran course and distance for its northeast corner the northwest corner of the Moore, and found the true boundary line between the surveys to be the line found and identified by Gillespie and Powers in 1860, east of the land in controversy.

The defendant Miller testified that he had always understood that the line run by Trott was the true line between the surveys; that in March, 1887, Gillespie, county surveyor, surveyed the land claimed by him, and had followed and adopted the lines and calls of the Bringhurst survey, and given a certificate to the effect that he had correctly established the corners of said land according to map of subdivisions of the Moore league

recorded in book C, and that he put a fence on the west line as run by Gillespie before this suit was brought.

Gillespie testified that he had made surveys by both lines since 1860, as parties desired; that Trott and Bringhurst were early surveyors of Harris County, and recognized as good surveyors.

There was no other evidence relating to the question of boundary, nor was there any evidence tending to show that the plaintiff Porter or those under whom he claims ever agreed to, acquiesced in, or recognized the line run by Trott as the boundary line between the two surveys. We think it too clear to require argument that the conclusion of the court on the question of boundary is not only against the weight of the evidence but is without evidence to support it.

It is also contended that "the court erred in adjudging from the evidence adduced the law to be with defendants on the questions of three, five, and ten years limitation."

The land in controversy commences at the northwest corner of the Moore and extends down the dividing line between the surveys 502 feet. The land belonging to defendant Mrs. Miller commences at the same corner and extends down the dividing line 250 varas. The Seneschal 44¼ acres commenced at same corner, and ran down the dividing line 1000 varas. Defendant Miller testified that the improvements occupied by Seneschal and his family were situated on the lower half of the 44 acres, near the west line of the survey made by Bringhurst; that Seneschal and he claimed the land by the Bringhurst survey; that several acres had been enclosed around the Seneschal house, and fruit trees and parts of the fence are still there; that he and his wife had held the land by inheritance from her father since 1872; that there never was a fence or other improvement on the upper half of the Seneschal 44 acres, or on or around the land owned by his wife; that there was never a fence around the land in controversy until he fenced it just before this suit was brought. Several witnesses testified that Seneschal moved on the 44 acres in 1841, and lived there with his family until 1854, and some of his family remained on it until 1860, and that he had an enclosure around the house and cultivated a part of the land.

There was no other evidence upon the question of the possession of defendants or of those under whom they hold. Plaintiff and defendants claim under different grants, and to sustain the defense of limitation there must have been an actual occupancy of the land, beyond which the possession can not be extended by construction. Such possession must be not only actual but continued, visible, notorious, distinct, and hostile. Peyton v. Barton, 53 Texas, 298; Burton v. Cardwell, Id., 408; Bracken v. Jones, 63 Texas, 184; Blassingame v. Davis, 68 Texas, 598.

We think it quite clear that the evidence wholly fails to sustain the pleas of limitation.

We are of opinion that the judgment of the court below should be reversed and judgment rendered here for appellant.

*W. H. Crank* and *J. M. Coleman* argued motion for rehearing.  The motion was transferred to the Austin Term.

GAINES, ASSOCIATE JUSTICE.—Upon consideration of the motion for a rehearing which has been filed in this case, we are of opinion that it should be granted, and that instead of reversing the judgment of the court below and rendering judgment for appellant, the judgment below should be reversed and the cause remanded for a new trial.

We see no reason to question the correctness of the conclusion in the former opinion that the true dividing line between the Moore and Tierwester surveys is situated where appellant claims it to be, and that the land in controversy is a part of the Tierwester grant.  Two surveyors testified that south of the land in controversy that line runs a mile and a half through a timbered country, and that it is well marked and defined, and that a prolongation of the marked line places the strip in dispute on the Tierwester survey.  The appellees do not controvert these facts.  The fact that other surveyors at an earlier day had surveyed a different line, and that many persons had recognized it as the true line, can not prevail against this direct evidence.

But it is not clear to us that the appellee Mrs. Miller is not entitled to the land by virtue of the statutes of limitation.  It may be true that the possession of Seneschal (Mrs. Miller's father) can not be extended by construction beyond the actual limits of the Moore survey.  His deed from Levi calls for the west boundary line of the Moore as the west boundary of the land conveyed to him, and there are no calls either for natural or artificial objects in the deed which indicate that the west line was to be other than the true boundary of the original survey.  Hence, if Seneschal did not have possession of any part of the land lying between the true line of the Moore and the line surveyed by Trott as that line, the statute of limitation can not avail the defendants in this suit; but if his possession did embrace any part of this disputed strip, it seems to us that his title to all the land claimed by him became perfect by virtue of the ten years statute.  The evidence makes it clear, we think, that Seneschal believed that his deed conveyed to him all the land to the line run by Trott, and leaves but little if any doubt that he claimed to that line.

The statute then in force gave title to a naked possessor to six hundred and forty acres of land, including his improvements (Pasch. Dig., art. 4624), and we see no reason why Seneschal was not entitled to its benefit to the extent of his well defined claim, provided he had actual possession for the requisite period of that part of the land claimed by him which lies west of the true line of the Moore survey.  If, however, his actual

possession was confined to the land which is a part of that survey, his constructive possession was confined to the boundaries of his deed.   Possession of a part of a tract of land under a deed extends by construction to the limits described in the conveyance.   In like manner the constructive possession is restricted to the land described in the deed.

The defendant Miller testified that Seneschal's improvements were near the west line of the land as surveyed by Trott.   This may be true, and yet they may have been wholly upon the Moore survey.   In order for defendants to hold by limitation they must show distinctly that Seneschal's enclosures embraced a part of the land claimed by him which lies outside of the Moore survey.   The evidence leaves the exact locality of his improvements uncertain, and for this reason we think the cause ought to be remanded.

It did not appear upon the trial that during the time Seneschal had possession of the land conveyed to him by Levi that the owner of the northeast corner of the Tierwester survey was in possession of any part of his land.   If this should be made to appear upon another trial, then Seneschal's possession, if he had possession of the disputed strip, would be confined to that part actually occupied by him.   The owner of the Tierwester had the superior title up to the true Moore line, and that title drew to it by construction the possession to that line, provided the owner was in actual possession of any part of his land.   See Anderson v. Jackson, 69 Texas, 346, and cases cited in the former opinion.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 22, 1890.