## FLEMING et al. v. ATLAS et al.

### No. 9724.

Court of Civil Appeals of Texas. Galveston.

April 4, 1932.

Rehearing Denied May 26, 1932.

Geo. A. Byers, of Houston, for appellants.

Will C. Perry and Maco & Minor Stewart, all of Houston, for appellee Max Atlas.

W. F. Carothers, of Houston, for appellee W. H. Goetzmann.

LANE, J.

This suit was brought by Jesse Fleming, Ella Howard Burton, joined by her husband, Frank Burton, Annie Tutmon, joined by her husband, Anthony Tutmon, Emma Reed, and Loetha Fromme, against Max Atlas, Sam Atlas, and J. A. Platt, trustees, the South Texas Lumber Company, a corporation, the city of Houston, George W. Stephenson, Ida L. Bonn. and husband, Turner Bonn, Bertha Brunner and husband, A. Brunner, and H. H. Kuhlman.

Plaintiffs in their petition allege that on the 20th day of February, 1926, they were the owners, lawfully seized and possessed, with full title and entitled to the possession of a certain tract of land situated in Harris county, Tex., described as follows:

"Beginning at a point, the Southwest cor-

ner of Block No. Three (3) of the Kuhlman Addition, or Sampson Street, 100 feet South 20 deg. West of the corner of Beulah Avenue and Sampson Street; Thence South 70 deg. East one Hundred and fifty (150) feet for corner; Thence South 20 deg. West One Hundred and fifty (150) feet; Thence North 70 deg. West one Hundred and fifty (150) feet to the East Line of Sampson Street; Thence North 20 deg. East along the East line of Sampson Street One Hundred and fifty (150) feet to the place of beginning, and being out of Lot No. Five of the East one-half of the said Henry Tierwester Survey."

They alleged that they and those under whom they claim and whose title they acquired have had peaceable and adverse possession thereof, using, cultivating, and enjoying same, for more than thirty years prior to the institution of this suit and for more than ten years next after the defendants' cause of action accrued; that by reason of such possession they have acquired and hold title to said land; that defendants have unlawfully entered upon and dispossessed plaintiffs of said land, and withhold the same from the possession of plaintiffs, to their damage in the sum of $3,000.

They pray for judgment for the land and for possession thereof.

Defendant Max Atlas answered by general demurrer, general denial, and specially pleaded the five-year statute of limitation in bar of plaintiffs' suit. He alleged that he purchased a part of the land from J. F. Means in good faith, paying a valuable consideration therefor; that, since J. F. Means conveyed the land to him, he has in good faith made permanent improvements thereon of the value of $7,500; that such improvements were made more than one year before the suit was filed; and that by reason of such improvements said land has been enhanced in value in the sum of $7,500. He prayed that, in the event judgment should be rendered in favor of plaintiffs for the land, then that he have judgment against plaintiffs for the value of said improvements.

By cross-action he alleged that he purchased a part of the land sued for from J. F. Means, who executed and delivered to him a warranty deed therefor; that W. H. Goetzmann by his general warranty deed conveyed to J. F. Means a tract of two acres of land which included the land sued for by plaintiffs; that both the deed from Means to this defendant and the deed from Goetzmann to Means recites that the respective vendor binds himself, etc., to warrant and forever defend the title to the premises conveyed to their respective vendees and their assigns, against every person claiming or to claim the land or any part thereof. He made both J. F. Means and W. H. Goetzmann parties defendant, and prayed that, if plaintiffs should recover in their suit, then in that event he have judgment over against Means and Goetzmann on their respective warranties for the value taken from him by plaintiffs' suit.

J. F. Means by his answer admitted that he had warranted the title to the land conveyed by him to the defendant Atlas, and prayed that, if said defendant should recover against him, he have judgment against his vendor, Goetzmann, on his warranty.

W. H. Goetzmann in his answer admitted his liability under his said warranty as alleged by defendant Atlas.

Defendants J. A. Platt, trustee, South Texas Lumber Company, and H. H. Kuhlman answered, disclaiming any interest in the land sued for by the plaintiffs.

The city of Houston answered by general denial and plea of not guilty.

By supplemental petition, the plaintiffs made Shirtie Gilford and wife, Josie Gilford, Griffin White and wife, L. B. White, Andrew West and wife, Lucretia West, R. Albert and wife, Cora Albert, the City Bank & Trust Company, First National Bank, parties defendant, alleging that said parties are claiming some right, title, or interest in the land sued for. They pray for judgment for the land as against said parties.

Defendants Gilfords, Wests, and Alberts denied generally.

None of the defendants other than those whose answers have been mentioned above made answer.

Defendants offered in evidence two deeds, one from Burton and Susan Fleming of date March 3, 1896, by which they conveyed to Emma Reed a tract of land described as being out of the northwest corner of a ten-acre tract conveyed to the Flemings by Sophia Christian Kunst, and bounded as follows: Beginning at the northwest corner of said 10-acre tract (Kunst tract); thence south 70 degrees east 200 feet to a stake for corner; thence south 20 degrees west 100 feet to a stake for corner; thence north 20 degrees west 200 feet to a stake for corner; thence north 20 degrees east 100 feet to the place of beginning; same being a part of the Tierwester survey on the south side of Buffalo Bayou in Harris county, Tex.

The other from the same parties, of date April 4, 1906, by which they conveyed to W. R. Britton all of the unsold portion of the tract of land then owned and occupied by such vendors, the west line of which extended along what has been known as Sampson street since 1901, and is now so known.

The case was tried before a jury upon special issues, in answer to which the jury found that Burton Fleming and his wife, Susan Fleming, by their deed of date March 3, 1896,

intended to convey to Emma Reed a tract of land 100 by 200 feet, situated in the extreme northwest corner of the tract then owned and occupied by Burton Fleming and wife, the west line of which extended along what is now Sampson street; and that Burton Fleming and wife, Susan Fleming, by their deed to W. R. Britton, dated April 4, 1906, intended to convey to Britton all of the unsold portion of the tract of land then owned and occupied by them, the west line of which tract extended along what is now known as Sampson street.

There were other findings by the jury, but, as they have no pertinency to any issue presented for our decision, we have refrained from mentioning them.

The trial court rendered judgment upon the findings of the jury and the evidence, wherein it is recited as follows:

"The Court further finds as a fact from the undisputed evidence in this case that on and before March 3, 1896, and regardless of whether Burton and Susan Fleming had a record title thereto, that Burton and Susan Fleming had acquired title by the ten years' statute of limitation to the following tract of land, to-wit: A tract 500 feet along Sampson Street and extending eastwardly between parallel lines, lying between Block No. 3 of the Kuhlman Addition on the north and Block No. 7 of the Kuhlman Addition on the south, and which included the 150 by 150 feet involved in this suit.

"And it appearing to the court from the findings and answers of the jury to Special Issues Nos. 1 and 2 that the plaintiffs have wholly failed to establish and show title in themselves to the property and premises herein sued for, or any part thereof, and have wholly failed to show any right to recover said property and premises, or any part thereof, the said property and premises herein sued for being that certain tract, or parcel of land situated in the county of Harris, in the State of Texas, and in the City of Houston, being a part of the East one-half of the Henry Tierwester survey, described as follows: Beginning at a point in the East line of Sampson Street, at the Southwest corner of Lot No. 1, in Block No. 3 of the George Kuhlman Addition to the said City of Houston; Thence South 70 degrees East 150 feet; Then South 20 degrees West 150 feet; Thence North 70 degrees West 150 feet to a point in the East line of Sampson Street; Thence North 20 degrees East along the East line of Sampson Street 150 feet to the place of beginning; it is, therefore, considered, ordered, adjudged and decreed by the Court that the said plaintiffs, Jesse Fleming, Ella Howard Burton and husband, Frank Burton, Annie Tutmon and husband, Anthony Tutmon, Emma Reed, a feme sole, and Loetha Fromme, a feme sole, do have and take nothing in this suit as against any of the defendants herein, namely, Max Atlas, Sam Atlas, J. A. Platt, trustee, South Texas Lumber Company, The City of Houston, George W. Stephens, Ida L. Bonn and husband, Turner C. Bonn, Bertha Brunner and husband, A. Brunner, H. H. Kuhlman, Shirtie Gilford and wife, Josie Gilford, Griffin White and wife, L. B. White, Andrew West and wife, Lucretia West, R. Albert and wife, Cora Albert, The City Bank & Trust Company, the First National Bank, nor as against the defendants J. F. Means and W. H. Goetzmann, who were impleaded herein as warrantors by the said Max Atlas."

Max Atlas was denied any recovery against J. F. Means and W. H. Goetzmann on his cross-action, as was J. F. Means on his cross-action against Goetzmann.

From the judgment so rendered, the plaintiffs have appealed. The contention of appellants for a reversal of the judgment is that ten acres conveyed by the deed of Kuhlman to Kunst, of date April 30, 1857, which is referred to and known as the Kunst ten-acre tract, did not include the land sued for, they insisting that under the facts shown it must be held that the beginning point of such ten acres called for in the said deed of Kuhlman to Kunst is in the east boundary line of the Henry Tierwester survey as established and fixed by the decision of the Supreme Court in the case of Porter v. Miller, 76 Tex. 593, 13 S. W. 555, 14 S. W. 334, rendered in 1890; that such point being in said line the distance called for to run westwardly in the Kuhlman deed would not reach the land sued for by appellants, and therefore it was not within the boundaries of the Kunst ten acres called for by the deed, and it was therefore not conveyed by said Kuhlman deed of date April 30, 1857, but that, if it be conceded that the field notes in the Kuhlman deed did reach and include the land sued for, when the true east boundary line of the Tierwester survey was established by the decision of the Supreme Court in 1890, the boundaries of the ten-acre Kunst tract were moved eastward 125 varas, so that its east boundary line would correspond with the east boundary line of the Tierwester survey and its west boundary line drawn east so as to no longer include the land sued for.

We overrule appellants' contention. It is shown that Kuhlman owned a large tract of land, a part of the Henry Tierwester survey in Harris county, Tex., in or about the year 1850; that on or prior to 1857 he surveyed and platted three ten-acre tracts out of his land, believing that their east boundary lines corresponded with the east boundary of the Tierwester survey. One of the ten-acre tracts, the most northern, was sold to one Holmes or Helmes; the one just south of the Holmes tract was sold by Kuhlman to John

Kunst, and is the ten-acre tract in question in this suit, and the last or most southerly tract was sold to one Vogel. The deed by which Kuhlman conveyed the ten-acre tract to Kunst is dated April 30, 1857, and describes the ten acres as follows:

"Beginning at the S. E. corner of Christian Helmes 10 acre survey:

"Thence N. 70 deg. W. 312½ vs. to Helmes S. W. Corner;

"Thence S. 20 deg. W. 180 varas to a stake near a burned oak stump;

"Thence S. 70 deg. E. 312½ varas to a stake near a dead pine marked X;

"Thence N. 20 deg. E. 180 varas to the beginning."

It was shown that on the 7th day of March, 1876, the heirs of John Kunst by their deed of that date conveyed the Kunst ten acres to Burton Fleming, describing the same as it was described in the deed from Kuhlman to Kunst.

It is shown that the record title to the land claimed by appellee in this suit passed by mesne conveyances from Burton Fleming to him, hence, if Burton Fleming had title thereto, such title passed to and vested in appellee.

In support of appellee's contention that the beginning point called for in the deed of Kuhlman to Kunst by which the ten-acre tract was conveyed to Kunst was the same distance west from the east boundary line of the Tierwester survey as established by the decision of the Supreme Court in 1890, it was shown by the undisputed evidence that in or about the year 1838 Trott, a surveyor, made a survey to ascertain and establish the location of the east boundary line of the Henry Tierwester survey; that by such survey he established what he took to be such line, which was 125 varas west of the line as established by the Supreme Court in 1890. It was shown that from the time the Trott line was established in 1838 up to the year 1860 it was generally recognized and accepted by those owning land bordering thereon as the true east line of the Tierwester survey; that the surveyor who surveyed out the ten-acre tract conveyed by Kuhlman to Kunst began his survey at the southeast corner of the Holmes ten-acre tract, which was located on the Trott line, cannot be reasonably questioned. Appellants concede that if, as a fact, the beginning point called for in the deed from Kuhlman to Kunst was in the Trott line, it was some distance west of the east line of the Tierwester survey, and that in such case the land sued for would be embraced within the boundaries of the ten-acre Kunst tract.

The deed by which Kuhlman conveyed the ten acres to Kunst calls to begin at the southeast corner of the Holmes ten-acre tract, and then calls for boundary lines which would embrace the land claimed by appellee Atlas.

We are of opinion that there was no ambiguity in the deed; it described the land conveyed with certainty. It was shown that Burton Fleming was placed in possession of the very land described in the deed from the Kunst heirs to him. Wherefore it does not only appear from the recitals in the deed that the ten-acre Kunst tract extended west such a distance as to embrace in its boundaries the land claimed by appellee, but that the Kunst heirs intended to convey the very land the possession of which they delivered to Burton Fleming, and no other.

It will be noted, as we have already pointed out, that the description of the Kunst ten-acre tract in the deed from Kuhlman to Kunst does not call for the east line of the Tierwester survey, as the east line of said ten-acre tract, but the ten acres is described as beginning at the southeast corner of the Christian Holmes ten acres, and the subsequent calls would place the Kunst ten acres on the ground immediately south of and adjoining the Holmes ten acres, so that the east line of the Holmes ten acres and the east line of the Kunst ten acres would be one and the same line, or rather a continuation of the same line.

The evidence conclusively shows that the conveyance from John Kuhlman to John Kunst of the Kunst ten-acre tract was made in accordance with the field notes of a survey actually made upon the ground by one Stamm.

■ In determining the location of boundary lines of a tract of land, the footsteps of the locating surveyor will, when found, control. Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Fulton v. Frandolig, 63 Tex. 330; Allen v. Koepsel, 77 Tex. 505, 14 S. W. 151; Smith v. Boone, 84 Tex. 526, 19 S. W. 702; Morgan v. Mowles (Tex. Civ. App.) 61 S. W. 155, 156.

The fact is, as shown by the undisputed evidence, Kuhlman knew at the time he conveyed the ten-acre tract to Kunst that he was placing the beginning point of the boundaries thereof in the line established by surveyor Trott as the common boundary between the Luke Moore and Henry Tierwester surveys, which was in fact 125 varas west of such common boundary line. And from the evidence it is apparent that he at such time intended by his deed to convey, and that he did in fact convey, ten acres of land lying west of the Trott line and south of and adjoining the Holmes ten-acre tract.

■ The land claimed by appellee in this suit is shown to be a part of the Kunst ten-acre tract, and it is shown to have passed by mesne conveyances from John Kuhlman to appellee. We therefore overrule appellants'

contention that the court erred in admitting in evidence over her objection the several deeds constituting appellee's chain of title.

■ Counsel for appellants in his brief frequently refers to the case of Sam Atlas v. Byers, 21 S.W.(2d) 1080, decided by this court, as decisive that the Kunst ten-acre tract lay entirely east of the land claimed by the defendant Atlas in the present case. In the Atlas v. Byers Case a small tract was involved which is entirely different from the tract here involved, and the parties in that suit were different parties from those in the present suit. By no means can it be seriously contended that the decision in that case is res adjudicata of the question of the location on the ground of the Kunst ten-acre tract as raised in the present case. By no means can such decision be a guide to a determination of the issues involved in the present case.

The two cases, as to issues raised and as to evidence adduced on the trial, are entirely dissimilar. In the trial of the former case, there was no evidence tending to show that the Kunst tract had been located on the ground by an actual survey, nor to the effect that Burton Fleming, who was not a party to the suit in which the Supreme Court, in 1890, established the Powers line as the true dividing line between the Luke Moore and Tierwester surveys, continued to regard the Kunst ten-acre tract as being located on the ground as it was when he purchased the same and settled thereon. So that what this court refers to in the decision in the Atlas v. Byers Case as merely persuasive argument on the part of appellants' counsel in that case has been demonstrated by abundant evidence adduced on the trial of the instant case and foreclosed by findings of the jury. We refer to the matter of the two locations of the eastern line of the Tierwester survey, discussed in the closing paragraphs of the opinion of this court on page 1083 of 21 S.W.(2d). There this court alluded to the argument of counsel for appellant in that cause, to the effect that, Burton Fleming having settled upon and reduced to possession the Kunst ten-acre tract with respect to the east line of the Tierwester survey as the same was supposed to have been located at the time he purchased and settled upon such tract, it would be but natural for him to continue to regard the tract and to refer to the same as being located as originally reduced to possession, and this court held in the Atlas v. Byers Case that such argument was sufficiently answered and refuted by the contention of the appellee in that case to the effect that the deeds in question were executed by Burton Fleming several years after the question of the true location of the eastern line of the Tierwester survey had been definitely settled, and that it would be presumed that Burton Fleming, after the decision in the Porter v. Miller Case, had adopted the line established in that case

as the eastern line of the Tierwester survey as being also the east line of his tract purchased from Kunst.

In the present case the appellees have dispelled any such presumption by convincing proof of facts.

We think the judgment should be affirmed, and it is so ordered.

Affirmed.

On Motion for Rehearing.

As shown by our original opinion in this case, we affirmed the judgment of the trial court.

Appellants have filed their motion for rehearing, and in disposing of same we submit the following:

As stated in our original opinion, it is shown by the undisputed evidence that Surveyor Trott made a survey to locate the common boundary line between the Luke Moore survey and the Tierwester survey, same being the west line of the Moore and the east line of the Tierwester. Such survey was made by Trott in 1838, and was thought by him to be the true dividing line between the above-mentioned surveys, which was 125 varas west of the line as established by the Supreme Court in 1890. It was shown that from the time the Trott line was established in 1838 up to the year 1860 it was generally recognized and accepted by those owning land bordering thereon as the true east line of the Tierwester; that the surveyor who surveyed and located the ten acres conveyed by Kuhlman to Kunst in 1857 began his survey at the southeast corner of a tract of ten acres theretofore surveyed and located for one Helmes, or Holmes, the east line of which at that early date and long prior to the establishment of the east line of the Tierwester by the decision of the Supreme Court was located on the Trott line 125 varas, or 347 feet, west of said Tierwester line as established by the Supreme Court.

Prior to the filing of appellants' motion for rehearing in this court, appellants conceded that, if as a fact the beginning point called for in the deed from Kuhlman to Kunst by which the Kunst ten acres were conveyed was in the Trott line, it was 125 varas, or 347 feet, west of the true east line of the Tierwester, and that in such case the land sued for would be within the boundaries of the Kunst ten-acre tract, but in their motion for rehearing filed in this court, by a marshaling of figures, appellants' counsel undertakes to show that the call in the deed from Kuhlman to Kunst to run 312½ varas from the S. E. corner of the Helmes or Holmes survey would not reach Sampson street by 112 feet.

Counsel in his motion states that the deed from Kuhlman to Kunst conveying this ten. acres calls for its north line to be 312½ varas, or 868 feet, in length. Such statement is in-

correct, in that 312½ varas is 872 feet. He states that surveyor Gillespie surveyed such north line in 1927, and, after beginning on the east line of Sampson street, he ran east to an iron pin "which he took to be the N. W. (meaning the N. E.) corner of the Kunst ten acres, and from this point to the center of Scott Street was 519 feet, a total distance of 1080 feet." It will be at once observed that the two sums given by counsel, to wit, 868 and 519, added together is 1,387 and not 1,080. It is seen that Gillespie states only that he took the iron pin to be the northwest (meaning the northeast) corner of the ten acres, but he does not give the distance such pin was from the east line of Sampson street. If you take 1,080 feet, stated by counsel to be the distance from the east line of Sampson street to what is now known to be the true east line of the Tierwester survey, and deduct therefrom 125 varas, or 347 feet, the distance between the true line and the Trott line, there will be left only 733 feet to reach Sampson street, and not 868, as stated by counsel.

Counsel still contends that it is shown by the undisputed evidence that the surveyor who surveyed and laid out the three ten-acre tracts for Kuhlman, one of which was for Helmes, one for Kunst, and the other for Vogel, established the east line of such tracts in what is now known to be the true east line of the Tierwester survey, and then he figures that, if you measure 868 feet (instead of 872), the length of the north line of the Kunst ten-acre tract, you would not reach Sampson street by 112 feet.

Counsel is in error in assuming that there was any evidence showing that such surveyor did establish the east line of the said ten-acre tracts in the true east line of the Tierwester; to the contrary, all the evidence shows that such east line was established in the old Trott line. So a line running 872 feet west from the old Trott line will no doubt reach the east line of Sampson street.

If it were conceded that the iron pin, which Gillespie took to be the northeast corner of the Kunst ten acres was in fact such corner, and if it be conceded that such corner was 519 varas west of the true east line of the Tierwester survey, it must be conceded that running from such corner west 312½ varas would reach Sampson street, if not pass beyond it.

Again, if the iron pin found by Gillespie, which he took to be the northeast corner of the Kunst ten-acre tract, is 519 feet from the true east line of the Tierwester survey, as contended by counsel for appellants in his motion, and that, if that number of feet is deducted from 1,080 feet, said by counsel to be the entire distance from the Tierwester east line to Sampson street, it would leave only 561 feet for the north line of the Kunst ten-acre

tract, which falls far short of the length called for in that line in the deed from Kuhlman to Kunst. Certainly counsel will not earnestly contend that the iron pin found by Gillespie was in fact any corner of the Kunst ten-acre tract.

After making his remarkably erroneous figures, counsel jumps to the erroneous statement that the beginning point called for in the survey of the Kunst ten acres is located in the now known east line of the Tierwester survey, and upon such statement proceeds to show that, if 868 feet is taken from 1,080 feet, stated by him to be the entire distance from the Tierwester east line to Sampson street, there would be left 112 feet short of reaching Sampson street, and therefore this 112 feet, which would embrace the land sued for, is not within the boundaries of the Kunst ten-acre tract. The fallacy of such contention is shown by the evidence stated in our original opinion.

The motion is denied.