POLK COUNTY v. HOWE et al.

No. 2910.

Court of Civil Appeals of Texas. Eastland.

March 28, 1952.

Rehearing Denied April 25, 1952.

Scarborough, Yates, Scarborough & Black, Abilene, R. H. Jones, Livingston, T. R. Odell, Lubbock, for appellant.

Wheat & Newton, Dickson & Balch, all of Seymour, Guy Rogers, Wichita Falls, Barnet B. Skelton and Price, Guinn, Wheat & Veltmann, all of Houston, H. M. Muse, Wichita Falls, for appellees.

GRISSOM, Chief Justice.

Polk County sued Felix V. Howe and others in trespass to try title to several tracts of land lying northeast of the Brazos River in Baylor County and a small tract southwest of said river. The court instructed the jury to return a verdict for the defendants claiming the land northeast of the river and submitted the question of the true location of the southeast corner of the Polk County School Land Survey. The jury was asked to determine whether the southeast corner, as fixed by the field notes in the patent, is located at a point fixed by Rike and Jones, Polk County's surveyors, or at a point fixed by Smith, defendants' surveyor. The jury found the southeast corner to be at the point fixed by defendants' surveyor. Judgment was rendered for defendants and Polk County has appealed.

Appellant's points are that the court erred (1) in refusing to instruct the jury that the southeast corner is at the point fixed by Polk County's surveyors; (2) in instructing a verdict for defendants north of the river, because the field notes of the original survey of Polk County's School Land, on their face, show a part of said land to be located north of the river and included in the location made for Polk County; (3) in refusing to instruct the jury not to consider "that there is more acreage in the Polk County School Land than * * * called for in the patent field notes" in determining the location of the southeast corner; (4) in refusing to sustain Polk County's motion for judgment notwithstanding the verdict to establish the survey so that it begins at the southeast corner "as judicially determined" in Polk County v. Stevens, Tex.Civ.App., 143 S.W. 204, because the original field notes called for the location of the southeast corner on the north line of T. E. & L. Survey No. 2131, and the undisputed evidence showed the southeast corner was 850 varas west of the northeast corner of Survey 2131 and that the corner was marked and the survey located.

Polk County contends it was conclusively shown that the original survey of the Polk County School Land crossed the Brazos River and contained more than 1,000 acres of land north of the river. It says that in an award of school land to a county, it has always been permissible to cross a river and that in addition thereto the legislature, in March, 1883, Gen. Laws 1883, p. 28, validated school land surveys that crossed a navigable river. See Gammel's Laws of Texas, Vol. 9, pages 28 and 334.

It was stipulated that defendants have such title to the land sued for as the original pre-emption patentees had. It was agreed that the Brazos River is, in law, a navigable river, including all portions adjacent to the land sued for. The statement of facts contains the following stipulation:

"It is agreed between the parties that the northwest corner of Polk County School Land is now located as shown by the Smith Survey, being defendant's exhibit No. 7."

The real controversy as to the land north of the river is whether or not the Polk County School Land Survey crossed the Brazos River, a navigable stream, in the third north call on its northeast line, so that it conflicted with the homestead pre-emption surveys of the defendants north of the river. By its instructed verdict, the trial court held, as a matter of law, that said survey stopped on the south bank of the Brazos, did not cross the river, and, therefore, did not include the land sued for north of the river.

Defendant's exhibit 7 is a map of the Polk County School Land Survey prepared by defendants' surveyor, Smith. In connection with the stipulation that the northwest corner is at the point fixed by Smith, it is here pointed out that the southeast corner, as shown by said exhibit, was found by the jury to be at the point located by Smith and that it is about 755 varas west of the point claimed by Polk

County to be the southeast corner. Polk County's surveyors testified that in reaching the agreed northwest corner of the Polk County School Land Survey, they went more than 531 varas further west than called for in the patent.

There was also a controversy between Polk County and the defendants claiming land south of the river which was settled by the verdict fixing the southeast corner. Defendant's surveyor surveyed the entire Polk County School Land Survey on all sides and found no excess. He began at its northwest corner, as pointed out to him by Thurman and by Stribling, Throckmorton County's Surveyor, where he found iron rust indicating the "wagon wheel corner," where a wagon spindle had been buried to fix the corner, and ran the survey lines in reverse back to the place of beginning. Here, Smith also found a witness tree and a marked rock called for by the sketch from the land office. Smith also checked this point by tying it in with other surveys to the north and finding a witness tree and marks called for. He also surveyed it in the opposite direction. He also located the southwest corner of said survey, which was also pointed out by Stribling, which location was in accord with his survey. Smith's southwest corner was the same as the southwest corner located in 1890 by the subdivider of said survey, W. A. Eahart, special surveyor for Polk County, as shown by Eahart's map of said survey, introduced by plaintiff.

■ Polk County's surveyors surveyed only the northeast side, beginning at a place pointed out by John Davis, and a portion of its south boundary. The evidence as to the true location of the southeast corner of the Polk County's School Land was conflicting. The jury determined that conflict in favor of defendants and the evidence is sufficient to sustain the finding.

In 1839, the Republic of Texas set apart three leagues of land to each county for schools. 2 Gammel's Laws of Texas, 134. Pursuant to this act, a survey was made for Polk County, in 1859, by Posey H. Gordon, Deputy Surveyor of the Young Land District, which included Baylor County, which survey was certified to by Swindell, District Surveyor, and recorded in his office and in Polk County, in 1859, and filed in the Land Office. Contrary to appellant's contention, the original field notes of said survey, which are the same as those in the patent, show that the survey was located south and west of the Brazos River. The second and third north calls in the northeast line expressly stopped on the bank of the Brazos River and bearing trees were called for at each stop on the bank of the river. The second north call is "thence north 3,758 varas to a stake on the bank of the Brazos River upon which two cottonwoods bear south 36°. 500 vrs." The third north call is "thence north crossing a creek at 5,376 varas, a stake on the bank of the Brazos River from which a cottonwood brs. N. 8° E. 50 vrs."

The field notes call for crossing valleys and prairies and a creek but they nowhere call for crossing a river. On the contrary, they call for two stops on the bank of the Brazos River, with calls for bearing trees, and the stops could not be elsewhere than on the south bank of the Brazos. These are the original field notes and they are copied in the patent from the State to Polk County. The surveyor's plat in the corner of the field notes show that said survey did not cross the river; there are lines indicating that at all material points the Brazos River adjoined said survey on its northeast. Throckmorton County's maps, made in 1859 and in 1880, introduced by Polk County, show the same location. See State v. Atlantic Oil Producing Co., Tex.Civ.App., 110 S.W.2d 953, 958 (W.R.).

Appellees contend that Polk County has construed its survey in accord with this interpretation of its field notes and plats in many ways, including the following: (1) Eahart subdivided the survey for Polk County in 1890. The plat of his subdivision shows he included only land south and west of the Brazos, and, (2) Polk County has not, during the ninety years since it received a patent, exercised dominion or

made any claim to the land north of the river until it filed this suit. Defendants north of the river and their predecessors in title have been in possession thereof since about 1880, as pre-emption homestead claimants, and patents from the State have long since been issued to them. We agree with defendants' contention.

A plaintiff, in trespass to try title, must recover upon the strength of his own title. 41 Tex.Jur. 492. We agree with defendants' contention that Polk County failed to discharge its burden of proving title in itself to the land sued for, because the evidence, including the field notes, plats and patent introduced by it, show that its survey stopped on the south bank of the Brazos River and did not include the land sued for north of the river. See Premier Royalty Co. v. New Birmingham Development Co., Tex.Civ. App., 150 S.W.2d 269, 274 (D.C.J.). The evidence shows that in applying the patent field notes to the ground there is a conflict between the call for distance in the third call north and the call for a natural monument, the Brazos River, which, it is agreed, is, by virtue of the statute, a navigable stream. As a matter of law, the call for the south bank of the Brazos River controlled the call for distance, thus preventing the survey from crossing the river, unless as Polk County contends, an act to validate county school land surveys, enacted in March, 1883, changed the rule that would otherwise apply. Matheny v. Allen, 63 W.Va. 443, 60 S.E. 407, 129 Am. St.Rep. 998; Schnackenberg v. State, Tex. Civ.App., 229 S.W. 934, 938; State v. Atlantic Oil Producing Co., Tex.Civ.App., 110 S.W.2d 953, 957 (W.R.). Art. 5302, Vernon's Ann.Civ.St., which was then in effect, provides that navigable streams, which the Brazos is agreed to be, "shall not be crossed by the lines of any survey." Said validating act provides that the surveys of county school lands theretofore made are valid and "the title to the lands included within the lines of said surveys, as returned to the General Land Office, is hereby vested in the counties for which the same were made; and in all such surveys the call for distance shall have precedence and control calls for rivers or natural objects, when the calls for distance will give the quantity of land intended to be included in the survey, and the calls for natural objects or rivers will not; provided, this act shall not divest any vested right." 9 Gammel's Laws of Texas, pages 28 and 334.

The general rule with reference to the comparative dignity of calls is to the effect that when the description of the boundaries of a grant, consistent upon its face, is applied to the ground inconsistencies are shown, controlling effect is given to the boundary call which will give effect to the intention of the parties. In the application of such rule, controlling effect is given, first, to calls for natural objects, second, calls for artificial objects, and third, calls for course and distance. 7 Tex.Jur. 159, 160. In Galveston County v. Tankersley, 39 Tex. 651, 652, 660, the Supreme Court said:

"The doctrine that whenever there is a conflict in the calls, or when the true line is uncertain, natural objects, such as rivers or mountains will control calls for course and distance, has become too well settled to be questioned."

When the original survey was made, the field notes prepared and the patent issued, there was a statute which provided that navigable rivers "shall not be crossed by the lines of any survey." Art. 5302. The validating act of 1883 certainly did not change said rule and statute except when the call for distance will give the quantity of land intended to be included in the survey and the call for a river will not, and, in such event, only if no vested right is divested. Before Polk County could obtain any advantage from the validating act, it was required to establish that the call for the south bank of the Brazos River, as it existed when the land was surveyed, would not give to the Polk County School Land Survey the amount of land intended and that the call for distance would, and also, that neither

said defendants nor their predecessors in title had any vested rights in the land when the validating act became effective.

From a study of the entire record, we conclude that Polk County has not discharged said burdens. Assuming that it has shown where the river was at the third call north on the northeast line of the Polk County School Land survey when the land was surveyed, it has not shown that it will not get the quantity of land intended to be conveyed to Polk County under the boundaries established by the judgment appealed from. See Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304. Appellant's surveyor, Jones, testified that he had calculated the acreage "according to the field notes in this patent for Polk County" and it was "about 10 acres short of three leagues." Surveyor Smith's testimony was to the effect that with the boundaries established by the judgment, Polk County would get within two acres of three leagues and if the line was extended at the third north call across the river, so that it would include the land claimed by the County, it would have an excess of more than 1,000 acres. See Galveston County v. Tankersley, supra. As we understand the record, Polk County's surveyors did not survey anything except the northeast line and a small portion of the south line, from which survey it was impossible to accurately calculate the acreage actually contained in the Polk County boundaries as claimed by it, or as established by surveyor Smith and the trial court's judgment. But, if Jones meant what he actually said, the County is getting, under the judgment, more acres than its patent calls for. Furthermore, appellant failed to show that appellees or their predecessors in title had not acquired any vested rights in the land when the validating act became effective. Therefore, Polk County has not shown that it is entitled to take advantage of the conditional exception to the general rule provided by said validating act. The general rule applies and the call for the bank of the river controls. The presumption is that a surveyor did his duty and obeyed the law. At the time the Polk County School Land survey was made and the field notes prepared that went into the patent, the statute provided that a navigable river "shall not be crossed by the lines of any survey." Art. 5302. Since there is a conflict in the third north call on the northeast line between a call for a natural monument, the Brazos River, and the call for distance, with no evidence that the surveyor actually crossed the river, the presumption is that he stopped at the river bank. 7 Tex.Jur. 213; Phillips v. Ayres, 45 Tex. 601; Oklahoma v. Texas, 268 U.S. 252, 254, 45 S.Ct. 497, 69 L.Ed. 937, 942; State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1068; Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728, 731. We conclude, therefore, that the court did not err in instructing a verdict for the defendants claiming the land north of the Brazos River.

Appellant's third point, that the court erred in refusing to instruct the jury that in determining the location of the southeast corner it should not consider the fact that there are more acres in the Polk County School Land Survey than called for in the patent field notes, is overruled. Whether said survey contained an excess was a question of fact, depending on the location of the southeast corner. Smith testified there was no excess. The requested instruction would have been a comment on the weight of the evidence. To instruct the jury that there are more acres in the survey than called for in the patent is, in effect, to tell the jury to disbelieve defendants' witnesses.

Point four is that the court erred in overruling Polk County's motion for judgment notwithstanding the verdict, on the theory that the southeast corner as fixed by Rike and Jones was judicially determined to be such corner by the decision in Polk County v. Stevens, supra, because the original field notes called for said corner to be in the north line of T. E. & L. Survey No. 2131 and the "uncontradicted proof" showed the southeast corner was 854 varas west of the northeast corner of Survey No. 2131, "and that the corner was marked and the survey located." Appellants' argument in connection with this point concedes that there is now no evi-

dence on the ground of any original monument that was placed there when the original survey of Polk County's school land was made and that roads and fences are now almost the "only remaining evidence of the footprints of the original surveyor."

As heretofore stated, in this case the location of the southeast corner was a question of fact. Defendants' surveyor testified that, after a diligent search, he was unable to find said corner on the ground or any of the bearing points called for to locate it. Polk County's surveyors believed they found the northeast corner of Survey 2131 and a rock for the southeast corner of Polk County's land but their evidence, when considered with all other, is certainly not conclusive of the question. Smith made a search on the ground for evidence of the location of the northeast corner of Survey 2131 (Peters Colony Survey), the patent having placed the southeast corner of the Polk County School Land Survey 854 varas west thereof. Smith found nothing he could identify on the ground that was there in 1853 when the original survey was made from which he could locate the northeast corner of Survey 2131. But, Smith located the southeast corner of the Good Survey on the ground and fixed the southeast corner of the Polk County School Land Survey 4,728 varas east thereof as called for in the patent. The patent called for the southeast corner to be 4,728 varas east of the southeast corner of the Good and in the north boundary line of the Peters Colony Survey. True, it was stated to be 854 varas west of the northeast corner of number 2131. If there is nothing from which the northeast corner of 2131 can be identified, as Smith testified, nevertheless it can be located from the southeast corner of the Good by following all other calls. Smith found evidence of an old travel-way with a gate at that point which he fixed as the southeast corner. The "travel-way" continued west from his southeast corner, "the patent call of Polk County up to the Good." Smith also started at the northwest corner of Polk "and ran to establish the southeast corner by the patent calls." Smith's survey fitted into the Williams survey to the east. Surveying from his southeast corner of the Polk, Smith followed the Polk's northeast line according to the patent calls. On the second call north, which calls for 3,758 varas to a stake on the bank of the Brazos, he found the call for the west line of the Williams Survey which also called for a point on the bank of the Brazos at the north end of the same line. Surveying from Smith's southeast corner of the Polk, he crossed Hog Creek on the same line called for in the field notes of both the Polk and Williams Surveys. Smith found an iron stake 755 varas east and 52.7 varas north of the first northeast corner he established for Polk. At that point he saw evidence of a new, very plain, trim line, probably made by plaintiff's surveyors, going south from that stake. This trim line is 755 varas east of Smith's southeast corner of the Polk. This difference in the location of the southeast corner would make a difference of about 1071 acres in the Polk County Survey. Smith said that if this trim was made by plaintiff's surveyors and was their second north call for Polk County's northeast line there could be no room on the east for the Williams Survey and said point could not have been west of the old river bed. He testified that the map made by Polk County's surveyors showed the south line of the Good, which is a common line with the south line of the Polk, extended about 700 varas further east than the patent calls for the Good to be. There is much more evidence, too lengthy to be stated, from which it may reasonably be concluded that Smith's southeast corner of the Polk is correct.

The question in the Stevens case was the location of the northwest corner of the Polk County School Land Survey. The northwest corner was established from the testimony in that case. The location of the southeast corner was then well known and not in dispute. From the facts then before the court, it concluded that the northwest corner should be reached by beginning at its then undisputed southeast corner and traveling the course and distance called for in the

field notes. In the Stevens case there was no question of a conflict between the third north call for distance and the call for the river bank. Here, it is shown that when said calls are applied to the grounds, they are in conflict. The facts are different in this case. Here, the location of the northwest corner is undisputed and the location of the southeast corner is disputed. Both the facts and the law questions are different. We conclude that the decision in the Stevens case is not controlling here. State v. J. M. Huber Corporation, Tex. Civ.App., 193 S.W.2d 882, affirmed 145 Tex. 517, 199 S.W.2d 501; Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505 (W.D.C.J.); State v. Franks, Tex.Civ. App., 113 S.W.2d 589 (W.R.); Joslin v. State, Tex.Civ.App., 146 S.W.2d 208 (W. R.); Fleming v. Atlas, Tex.Civ., 51 S.W.2d 632 (W.D.); Eubanks v. State, Tex.Civ. App., 203 S.W.2d 339, 342.

The judgment is affirmed.